Andrew **PENA**, Libelant,

v.

A/S **DOVREFJELL**, Claimant-Respondent (New York & Cuba Mail Steamship Company and International Terminal Operating Co., Inc., Respondents-Impleaded).

United States District Court
S. D. New York.

Sept. 17, 1959.

Nelson, Healy, Baillie & Burke, New York City, for claimant-respondent, Robert M. Atkinson, New York City, of counsel.

Symmers, Fish & Warner, New York City, for respondent-impleaded New York & Cuba Mail S.S. Co., William Warner, New York City, Peter J. Malloy, Jr., Lynbrook, N. Y., of counsel.

John P. Smith, New York City, for respondent-impleaded International Terminal Operating Co., Inc., Joseph A. Driscoll, New York City, of counsel.

SUGARMAN, District Judge.

On December 27, 1955, Andrew Pena was working as a member of a gang of longshoremen unloading a cargo of tobacco from No. 4 hold of the S.S. Siboney at Pier 34, North River, New York City. Pena was employed by the International Terminal Operating Company. There were on the bottom of the No. 4 hold 28 drums and 138 packages of metal scrap. The drums stood on end. The drums and packages were covered by heavy gray paper, designed to protect from contamination the bales of tobacco stowed over the metal scrap. The paper was covered by dunnage planks of varying sizes.

At about noon of that day, the hatch boss ordered the men to stop work for lunch. Some of the tobacco had been removed. Pena began to walk from the place where he was working in the after end of the starboard section of No. 4 hold to the exit ladders located amidships when a piece of dunnage broke causing his foot and leg to drop through an opening between the drums beneath the broken board. Pena sustained a back injury of some severity. He had had prior injuries to his back.

## The Pleadings.

On March 5, 1956, Pena filed a libel in admiralty against the S.S. Siboney, for the injuries sustained thereon by him on December 27, 1955. His original libel demanded $40,000 in damages. On November 16, 1956, he amended his libel to demand $150,000 in damages.

After filing a stipulation as the owner of the Siboney, the claimant-respondent, A/S Dovrefjell (Dovrefjell) filed its answer.

On April 17, 1957, Dovrefjell, after leave granted so to do, filed its impleading petition for indemnity against respondents-impleaded, New York & Cuba Mail Steamship Company (New York & Cuba) and International Terminal Operating Co., Inc. (International). New York & Cuba was alleged to be the time charterer of the Siboney and International the stevedore unloading the vessel by agreement with the time charterer and employing the libelant Pena.

On June 3, 1957, New York & Cuba answered the impleading petition of Dovrefjell and the libel of Pena and filed a petition for indemnity from Dovrefjell and International.

On June 28, 1957, Dovrefjell answered the petition of New York & Cuba for indemnity.

On August 1, 1957, International answered the petition for indemnity of Dovrefjell.

On December 10, 1958, New York & Cuba filed a supplemental petition indicating that it and Dovrefjell, at a pre-trial settlement conference, settled the libelant Pena's claim for $32,000, of which it, New York & Cuba had assumed and paid $16,000 and had incurred legal expenses of $5,500, and sought indemnity for the total of $21,500 from International.

On December 17, 1958, Dovrefjell filed a supplemental petition indicating that it and New York & Cuba, at a pre-trial settlement conference, settled the libelant Pena's claim for $32,000, of which it, Dovrefjell, had assumed and paid $16,000 and had incurred legal expenses of $6,000, and sought indemnity for the total of $22,000 from International.

On January 23, 1959, International answered the supplemental petitions of Dovrefjell and New York & Cuba.

The owner and the charterer rely in the first instance on the stevedoring contract as the basis for their claimed right to indemnity. This reliance is misplaced.

As hereinafter appears, I find that the International Terminal Operating Company was blameless in respect of Pena's claimed injury.

It has been authoritatively decided that it is "most reasonable" to construe indemnity agreements of this kind to cover even those instances where negligence of the putative indemnitee was a proximate cause of the injury concurrent with the negligence of the putative indemnitor.[1] However, it is not at all reasonable to read the instant agreement as an acceptance by the stevedore of any and all liability arising out of the work done by the stevedore in the absence of at least some contributing fault on the part of the stevedore. Keeping in mind that Pena's accident occurred on December 27, 1955, this construction is strengthened, if not compelled, by the fact that, by addendum dated and effective July 26, 1950, a clause imposing such absolute liability was added to the stevedoring contract, and by letter dated September 9, 1955, from the charterer, confirmed by the stevedore's letter of October 7, 1955, the addendum dated July 25, 1950 was cancelled.

The parties offered no explanation for the addendum or its cancellation. The court can only assume that the parties to the stevedoring contract deemed the stevedore's responsibility expanded by the addendum of July 26, 1950 so as to include all liability to all persons aris-

---

1. Porello v. United States, D.C.S.D.N.Y., 94 F.Supp. 952 cited with approval, A/S J. Ludwig Mowinckels Rederi v. Commercial Steve. Co., 2 Cir., 1958, 256 F. 2d 227, certiorari dismissed 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49.

ing by reason of the fault of any person including the owner or charterer and including instances where the stevedore might be without fault.

■ The unexplained cancellation of the addendum must mean that the stevedore's liability was intended to be diminished at least to the extent of relieving it of liability where it was, as in this case, completely without fault.

Nor are the petitioners entitled to indemnity by reason of the stevedore's warranty of workmanlike performance.[2]

■ The sole proximate cause of Pena's injuries was the breaking under his foot of the piece of dunnage which the charterer, through its agents had used in stowing the tobacco in Havana. I reject the weak evidence tending to show that Pena had stepped through an interstice concealed by the paper. There is nothing to prove that International Terminal Operating Co. failed in any duty to inspect the area where its employee Pena was working. Nor have petitioners offered anything persuasive that the board which gave way was obviously defective.

■■ The stevedore had the right to assume that the petitioners here had fulfilled their respective duties to it.[3]

"In the absence of any condition to excite suspicion or to suggest defects or danger, the stevedore might assume the safety of the appliances, and that due care had been used by the shipowner to keep and maintain them in reasonably safe condition. * * * To expect a stevedore, in the absence of these indications, to minutely examine masts, booms, and bolts, and apply to them expert scrutiny before permitting his servants to use them, would be unreasonable. * * *"

The Court of Appeals for this circuit has more succinctly stated the rule:[4]

"[A]n implied warranty of workmanlike performance by a stevedore does not place upon him a duty to discover defects in the apparatus or equipment furnished by the vessel being loaded or unloaded which are not obvious upon a cursory inspection."

I am satisfied that the dunnage floor on which Pena worked was not patently unsafe even though one of the boards broke under his weight and even though there were gaps between the boards. The expert testimony was clear and convincing that openings such as were found between the dunnage boards involved in this suit are usual and in fact necessary for proper ventilation of cargo.

Captain Wheeler testified that spaces of about eight inches between dunnage boards in a work area would not per se render that area unsafe. Considering his background, I accept his opinion in this respect in preference to Captain Allen's contrary view.

The petitioners have failed to sustain their burden of proving the facts necessary to support their respective claims to be indemnified by International Terminal Operating Co.

I conclude that International Terminal Operating Co. is entitled to judgment with costs.

Settle judgment accordingly.

2. Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491.

3. Liverani v. John T. Clark & Son, 1921, 231 N.Y. 178, 181, 131 N.E. 881.

4. Ignatyuk v. Tramp Chartering Corp., 2 Cir., 1957, 250 F.2d 198, 201.