**Frank LAMAZZA, Libelant,**

v.

**UNITED STATES of America,**
**Respondent,**

and

**Imparato Stevedoring Corporation,**
**Respondent-Impleaded.**

United States District Court
S. D. New York.

Oct. 25, 1960.

Harry Ruderman, New York City, for libelant.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, for respondent. Benjamin H. Berman, Walter L. Hopkins, Attys., Admiralty and Shipping Section, Dept. of Justice, New York City, of counsel.

Alexander, Ash & Schwartz, New York City, of counsel, to William J. Kenney, New York City; for respondent-impleaded. Sidney A. Schwartz, Joseph Arthur Cohen, New York City, of counsel.

McGOHEY, District Judge.

Lamazza sues for injuries sustained when he fell from a raised platform while loading stewards' stores on the Henry Gibbins, a government owned vessel, at a pier in Staten Island, New York.

█ The government denies liability, contending that Lamazza's injuries were caused by either the sole negligence of himself or that of his employer Imparato, the impleaded respondent, or both. Further, if held liable, it seeks indemnity from the impleaded respondent under the latter's contract with the government. The court's findings and conclusions appear in the opinion.

The platform was constructed of three stacks of wooden cargo pallets each five ft. by four ft. in area and 6 in. high. The platform, according to the vessel's chief officer whose testimony on this point I accept, was about five ft. high. Thus there were 10, or at most 11, pallets in each stack. The platform was "T" shaped. Two stacks were placed with their five ft. sides touching to form the cross bar which was thus five ft. in width and eight ft. long. Its length ran parallel to the vessel. The leg was five ft. wide and extended four ft. inshore from the center of the cross bar. It consisted of one stack placed so that one of its five ft. sides touched the inshore side of the cross bar and was centered on the latter's mid line where its two stacks touched. A steel plate measuring five ft. by four ft. was laid on the cross bar so that it covered all but about one ft. of the latter's mid line and extended about 1 ft. inshore on the leg, thus covering the juncture of the latter with the cross bar.

Wheels on either side of the inshore end of the ship's gangway rested on the plate near the inshore edge of the cross bar. They did not rest on any part of the plate which lay on the stack constituting the leg of the "T".

The gangway was five ft. wide and there was placed on it a roller conveyor consisting of steel rollers held in place by steel side frames. The gangway ran on a slight downgrade to a side port in the vessel.

The stores were in cartons or boxes. These were raised by hi-lo machines from the floor of the pier to the top of the stack constituting the leg. Lamazza stood on the top of that stack and transferred the boxes from the hi-lo to the roller conveyor. Another stevedore, Lupton, stood alongside the gangway, on one of the stacks constituting the cross bar, and moved the boxes down the roller conveyor towards the vessel.

Lamazza was 45 years old and in good health. He had 16 years' experience as a stevedore, of which three had been in the employ of Imparato.

Loading began at 8 A.M. and proceeded without incident until about 10:30 A.M. when the gangway began to shift inshore and out on the platform. Lupton called this to the attention of Coronato, the stevedore foreman. He also told the government's Port Steward. Coronato complained to the latter that this shifting resulted from the slack condition of the vessel's mooring lines. The Port Steward told Coronato the condition would be corrected by "breasting in" the vessel while the men were off the platform during their lunch period. It is dangerous to "breast in" while stevedores are working in such circumstances but if, as appears to have been the situation here, the shifting is not so great as to require immediate correction, it is customary to wait to "breast in" until the men go to meals, because this saves working time. Loading continued without accident until noon when the stevedores left for lunch.

When they returned at one o'clock the gangway's position on the platform was

radically changed. One corner was hanging well over the edge of one end of the cross bar at the offshore corner. The gangway's other corner was very close to that edge. Coronato, without making any investigation or inquiry to ascertain whether the vessel had been "breasted in" during the lunch hour, proceeded at once to get the gangway back into position so that loading might be resumed. He directed a hi-lo operator to raise the gangway a few inches above the platform and move it so that, as formerly, its wheels would rest on the plate. At the same time he ordered Lamazza and Lupton to mount the platform and restore to its former position the steel plate which also had been dislocated.

Just as the hi-lo got the gangway into proper alignment, but before it was lowered, it moved about five ft. inshore, without warning. The speed and force of this movement tipped the hi-lo to one side. The inshore end of the gangway struck Lamazza who was crouched down on the top of the stack constituting the leg, dragging the steel plate into position. The blow drove him over one of the four ft. sides of the stack and he fell to the floor of the pier, striking and injuring his head.

The "breasting in" had not been done during the lunch hour. The dislocation of the gangway and plate which the stevedores found at one o'clock had been caused by the vessel's continued movement which her slack mooring lines permitted.

The "breasting in" did not begin, according to the vessel's log, until one o'clock, and it was this operation which caused the gangway to strike Lamazza. The Chief Officer, who was on duty at the time, testified he had ordered the work to be done between 12 and 1 o'clock and that, although he did not see it done, he believed it was completed before one o'clock; and that the log was incorrect. I do not accept this part of his testimony. I find the work was not commenced until one o'clock. I find that, as the Chief Officer conceded, it is dangerous to "breast in" without warning in circum-

stances such as obtained here. I find that no one on the vessel gave the required warning. I find the government's employees were negligent. The government's contentions as to Lamazza's negligence are based entirely on speculation and are rejected. I find Lamazza was not negligent.

Lamazza's fall rendered him unconscious. He first was taken aboard the vessel and later to the hospital where a laceration on his forehead was stitched. After about two hours he was released and was taken home. He sustained a concussion but not a fracture of the skull. He was also bruised about the face and there was an abrasion on his nose. The accident occurred on February 18 and he was under medical care for postconcussion syndrome until May 23 when he was declared fit for work. He returned to work shortly thereafter but became dizzy after seven hours and Coronato brought him home. He did not again return to work until December 2.

I do not accept Lamazza's testimony that he was unable to work during all of this period. I find from the medical records of his treatment that he was able to return to work by the end of June at the latest. Although he continued to complain thereafter, the several doctors who examined him could find no basis for his complaints. Any loss of earnings after the end of June was not due to his injuries sustained in this accident.

■ Lamazza's average monthly earnings prior to the accident were $402. He lost a total of $1,742 during a period of 4⅓ months. His medical expenses amounted to $126. Fair compensation for his pain and suffering is $1,500.

Lamazza is entitled to an award against the United States for $3,368 and interest.

■ The government's claim for indemnity is based on the terms of the stevedoring contract. These required Imparato to "perform an efficient stevedoring operation"; to furnish at its own expense "all necessary and proper gear including * * * roller conveyors.

\* \* \*"; and to hold the government harmless from all "liability and expense for bodily injury \* \* \* of persons *occasioned in whole or in part* by the negligence or fault of the Contractor, his officers, agents or employees in the performance of work under this contract." (Emphasis supplied.) The contract further provided as a "specific exception" to the foregoing "general liability and responsibility of the contractor" that "the contractor shall not be responsible to \* \* \* and does not agree to hold the Government harmless from \* \* \* bodily injury \* \* \* if such injury resulted *solely* from" either "an act or omission" of government employees or from "proper compliance by" the contractor or his employees "with specific directions of the Contracting Officer." (Emphasis supplied.)

The government contends Imparato was both inefficient and negligent; and that Lamazza's injury was occasioned, at least in part, by these faults.

Inefficiency is predicated on the failure to use a "motorized conveyor" by which the cartons could have been lifted directly from the floor of the pier up to the side port of the vessel, thus eliminating the need for a raised platform. Negligence is predicated on the failure to provide a platform with sufficient working area, and Coronato's failure to ascertain whether the "breasting in" had been completed before ordering Lamazza to get up on the platform.

The contention as to the motorized conveyor is rejected. Coronato testified that the method of loading on this occasion was the same as had been used over a long period of time prior to the accident, pursuant to instructions from the Port Steward. This was not contradicted. The government did not call either the Port Steward or the Contracting Officer although both are in its employ.

The contention as to inadequate working area on the platform is also rejected. It certainly was sufficient on this occasion as long as the vessel was moored fast to the dock and there is no evidence that it proved inadequate on any of the other occasions on which it was used.

I find Coronato was negligent and that Lamazza's injury was, in part, occasioned by this negligence. Coronato was an experienced stevedore and in charge of the work. As his action at 10:30 in the morning shows, he knew the danger resulting from any considerable shifting of the gangway while the men were on the platform. Thus he knew or should have known the danger to which Lamazza would be exposed if the gangway moved in on the platform while he was dragging the steel plate into position; and that this was almost sure to happen unless the vessel had been securely moored. Common prudence therefore required that he take all reasonable means to make sure that the vessel was secure before ordering Lamazza to the platform. It is true the Port Steward had assured him in the morning that the vessel would be "breasted in" during lunch time. Nevertheless it was certainly foreseeable to an experienced stevedore that, either the Port Steward might have failed to issue the necessary instructions in time or even at all; or that, as appears actually to have happened, his instructions might not have been carried out. In view of the obvious risk involved, it was Coronato's duty to inquire of either the Port Steward or the ship's personnel. He failed to do so. Indeed it would seem he failed to make even a visual inspection for, if he had, he would have seen that the vessel had not been "breasted in."

■ Imparato, citing Mostyn v. Delaware, L. & W. R. Co.,[1] urges that the indemnity provisions of the contract do not "unequivocally" require Imparato to indemnify the government when, as here, the latter's negligence combines with Imparato's in causing injury. I disagree. Indeed it seems to me that the indemnity provisions summarized above can only mean that when both are negligent, the government is entitled to in-

1. 2 Cir., 160 F.2d 15.

demnity unless its negligence was the sole cause of injury and Imparato's negligence did not, in any way, contribute to such injury. I hold accordingly.[2]

The government is entitled to an award against Imparato for the full amount the government is required to pay Lamazza.

A decree in accordance herewith may be submitted on notice.

2. See Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861.