Michael CAPUTO, Plaintiff,

v.

UNITED STATES LINES COMPANY,
Defendant and Third-Party
Plaintiff,

v.

IMPARATO STEVEDORING CORP.,
Third-Party Defendant.

Civ. No. 16091.

United States District Court
E. D. New York.

Jan. 4, 1962.

Fuchsberg & Fuchsberg, New York City, for plaintiff; Jacob D. Fuchsberg, New York City, of counsel.

Kirlin, Campbell & Keating, for third-party plaintiff; Joseph M. Cunningham, New York City, Joseph P. Ritorto, Brooklyn, N. Y., of counsel.

Monica & Feury, New York City, for third-party defendant; Joseph P. Feury, Thomas H. Healey, New York City, of counsel.

BRUCHHAUSEN, Chief Judge.

The plaintiff, a longshoreman, employed by the third party defendant, Imparato Stevedoring Corporation, sustained injuries on December 3, 1954, while engaged in unloading cargo from the No. 1 lower hold of the SS American Ranger, owned by the defendant, United States Lines Company, hereinafter called the shipowner. He claimed that the accident and the resulting injuries were caused by the unseaworthiness of the vessel and the negligence of the shipowner. The jury rendered a verdict in favor of the plaintiff and against the shipowner in the sum of $70,000. The shipowner claims indemnification from the stevedore.

Witnesses testified that when the hatch was opened at approximately 8 A.M. on that day they viewed the cargo in disarray and that the crates were of uneven size, also some smaller pieces of cargo were stowed in between the larger crates. There was also testimony that some of the crates were wobbly. The hatch boss was informed of the condition and he told the men "to do the best you can." The longshoremen engaged in a bucket brigade operation whereby cargo passed from hand to hand until it

reached the square of the hatch for lifting from the hold. There was also testimony that during the three and a half hour period, prior to the accident, the men engaged in removing the cargo observed that no dunnage was used for flooring. Testimony disclosed that the main purpose of dunnage is to insure a dry cargo and that this type of cargo does not necessarily require dunnage for proper stowage. The plaintiff testified that he picked up a box weighing approximately forty pounds, turned around to pass it to the next man in his gang when suddenly one of his feet broke through the top of a crate and he was injured.

As previously stated the question presented to the Court is whether the shipowner is entitled to indemnification from the stevedore.

The Supreme Court in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 held that a stevedore warrants to a shipowner that it will do its job in a workmanlike manner and with reasonable safety and that any loss from this breach should be borne by the stevedore. The parties did not execute a formal contract. The Court held at page 133, 81 S.Ct. at page 237:

"It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product."

In Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, the Court extended the obligation of the stevedore to perform its duties with reasonable safety not only to the handling of the cargo as in the Ryan case, but also to the use of equipment of the vessel incidental thereto. The jury found the shipowner negligent, however, this did not in and of itself deprive the shipowner of indemnification because the obligations of the shipowner to the longshoreman are not identical with those of the stevedore to the shipowner. In remanding the action for a more specific finding, the Court at page 568, 78 S.Ct. at page 441 stated:

"While the jury found petitioner 'guilty of some act of negligence,' that ultimate finding might have been predicated, inter alia, on a failure of petitioner to remove the shelter when the ship left New York, or a failure to correct or warn respondent of a latent dangerous condition known to petitioner when respondent began the Boston unloading. Likewise, the finding might have been predicated on a failure of petitioner during the five days in Boston to inspect the shelter, detect and correct the unsafe condition. Although any of these possibilities could provide Connolly a basis of recovery, at least the latter would not, under Ryan, prevent recovery by petitioner in the third-party action."

The Court further held at page 569, 78 S.Ct. at page 442:

" * * * in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., supra, 350 U.S. at pages 132–133."

In Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413, a longshoreman was injured when a boom fell and struck the plaintiff. The equipment was in good condition. The winch, which served the boom, had a cut-off device to shut off the current at three tons, which was also the safe working load of the boom. The circuit breaker had been set to operate at a load slightly more than six tons before the winch was turned over to the stevedore. The Court found that the unskillful handling of the winch by the stevedore was the primary cause of the parting of the topping-lift and fall of the boom. The shipowner was entitled to indemnification although a defective cut-off device was furnished the stevedore.

In Calmar Steamship Corporation v. Nacirema Operating Company, 4 Cir., 266 F.2d 79, a defective cargo light was furnished the stevedore who accepted it, and threw it into the hold not properly "seized", meaning secured, which fell injuring the longshoreman. The jury found both shipowner and stevedore negligent and the unseaworthiness of the ship to be the proximate cause of the accident. The Court holding that any claim over could not be other than contractual, cited Ryan and Weyerhaeuser, and, at page 80 wrote:

"The court said that a service contract such as the one here involved implies a promise by the expert stevedore to perform 'with reasonable safety' and that this obligation relates not only to the handling of cargo, as in Ryan, but to the use of equipment incidental thereto, as in Weyerhaeuser. The District Court then held that the manner in which Nacirema had used the cargo light constituted a breach of this contractual duty."

In Lamazza v. United States, 190 F. Supp. 692 (S.D.N.Y.1960) both the shipowner and stevedore foreman knew of the condition of the gangway two and a half hours prior to the accident. Neither shipowner nor stevedore corrected the condition prior to the accident. The Court held the stevedore negligent in failing to correct the condition and, therefore, pursuant to the contract liable over to the government for the sum it was required to pay the longshoreman.

In Beard v. Ellerman Lines, Ltd., 3 Cir., 289 F.2d 201, a longshoreman was injured during unloading operations. The jury found the shipowner Ellerman negligent in not providing the longshoreman a safe place to work, and such failure constitutes negligence. The Court after discussing the authorities, held at page 207:

"Under the principles above stated, the 'warranty of workmanlike service to perform the obligations of the contract with reasonable safety',

extends to the handling of the cargo, and thus if it was negligence on Ellerman's part to permit Beard to work in an unsafe place, it was equally negligent for Atlantic to 'handle' the cargo in the unsafe place to work.

"It was Atlantic's conduct in proceeding to unload cargo in an unsafe place to work which 'called into play' the unsafe condition which prevailed, and under Crumady v. The Joachim Hendrik Fisser, supra [358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 473] it breached its warranty to Ellerman."

The Court further held at page 207 after citing American President Lines, Limited v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753, 759, 760, certiorari denied 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161:

" * * * We are not concerned here with a situation in which the stevedore's breach of duty brings about the injuries by operation upon a prior condition caused by the shipowner's negligence which is unknown to the stevedore. Here the stevedore was fully informed of the fact and of the possible consequences of the shipowner's negligence * * * and in face of all that proceeded to breach its duty so as to make that negligence an immediately dangerous force * * * [I]t was the stevedore's breach of duty that created the danger and made it an active condition with immediately foreseeable consequences of personal injury."

The Court went on to state at page 207 of 289 F.2d:

"The 'expertise' of Atlantic in the handling of cargoes should have made it aware of the dangers inherent in the discharge of the Philadelphia bales in view of the presence of the New York stow. If a jury could 'properly find', as Atlantic urges, that Ellerman was negligent in permitting the discharge under the cir-

cumstances which prevailed, because of their obvious dangers, it certainly follows that Atlantic, an expert in the field of handling cargo, should have shown an awareness of the situation and taken steps to avoid that which happened or refused to proceed with the discharge of the cargo until the site of discharge was made 'a safe place to work.' "

In American Export Lines, Inc. v. Revel, 4 Cir., 266 F.2d 82, a longshoreman was injured due to a defective winch. The shipowner and stevedore knew of the defect. The Court held that a shipowner supplying defective equipment will not necessarily bar him from recovery on his indemnity contract. The action being in contract depends upon whether his conduct has been such as to preclude recovery over against the stevedore, and not whether the shipowner was found negligent as to the longshoreman.

In Parenzan v. Iino Kaiun Kabushiki Kaisya, 2 Cir., 1958, 251 F.2d 928, the longshoreman was injured due to defective dunnage which broke under his weight. Shipowner and stevedore were aware of this condition. The shipowner was entitled to indemnification from the stevedore. The Court held at page 930:

"* * * With knowledge of the defective condition of the stow, the stevedoring company continued the unloading without taking corrective measures, and its negligence was the proximate and primary cause of the injury to Parenzan. American President Lines v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753."

The Court further held at page 930:

"Moreover, the shipowner's complaint was phrased not only in terms of negligence but also in terms of a breach of warranty. Under the stevedoring contract the third-party defendant impliedly warranted to perform the work in a competent and safe manner. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133."

In Hugev v. Dampskisaktieselskabet International, D.C., 170 F.Supp. 601, a longshoreman was injured during unloading operations due to improper placing of hatch beams and covers. The stevedore knew of this condition prior to the accident, but took no steps to correct the dangerous condition. The Court held that the stevedore breached its contractual obligation to discharge cargo in a workmanlike manner with reasonable safety and that such breach was the proximate cause of the longshoreman's injuries and the shipowner was entitled to recover indemnity from the stevedore. The stevedore represents himself to be the expert in loading and unloading cargo.

Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 278 F.2d 176; Shannon v. United States, 2 Cir., 235 F.2d 457; Cook v. Wasaborg, D.C., 189 F.Supp. 464; Vladimir v. Johnson, 1959 A.M.C. 457; Santomarco v. United States, 2 Cir., 277 F.2d 255, and Weigel v. Belgrano, D.C., 188 F.Supp. 605 are in essence identical. In each of these cases the stevedore knew of the danger and either disregarded the condition or did nothing to remedy the danger. Under these circumstances the stevedore is bound to indemnify the shipowner under the warranty doctrine. The Appellate Courts have held that negligence alone of the shipowner may not preclude its recovery over against the stevedore. In all the decided cases to date no court has defined what conduct of a shipowner will bar a recovery over against the stevedore.

Unquestionably in this circuit a plaintiff may recover for injuries sustained due to a latent defect in a board constituting part of a ship's cargo. Reddick v. McAllister Lighterage Lines, 2 Cir., 1958, 258 F.2d 297; Carabellese v. Naviera Aznar, S.A., 2 Cir., 1960, 285 F.2d 355.

In Reddick v. McAllister Lighterage Lines, supra, a longshoreman was injured when a board of a wooden case collapsed due to the weight of the plaintiff when

he stepped on a "blind board" one seemingly solid but latently defective. It was also found that there was no dunnage between the crates and in order to unload them, the longshoreman had to mount the crates and use a crowbar to separate them, so that slings could be passed around them for hoisting onto the pier. The Court found the vessel unseaworthy due to improper stowage and, therefore, liable to the longshoreman. In denying recovery over it held in part:

"However, even if it was properly found that Clark by improper stowage breached its implied warranty of workmanlike service to McAllister, a majority of the court thinks there is no showing that this breach caused Reddick's injury. The Ryan case, supra, and the recent case of Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, indicate that when dealing with contractual indemnity in this type of situation the application of tort theories of liability, i. e., 'active' or 'passive' and 'primary' or 'secondary' negligence, is inappropriate. Under the general test of foreseeability applied to contractual liability, the breach must have been the cause of the injury. We think that in this case the latent defect in the board on the top of the crate was an intervening cause which broke any causal chain that might otherwise have existed. The only result of improper stowage was to cause a man to walk on top of the cases and use a crowbar to pry them apart. If Reddick had been injured while trying to climb to the top of the crates, his injury might have been the foreseeable result of improper stowage and Clark in that event would have been liable over to McAllister. But Clark would not necessarily be liable for every conceivable mishap that Reddick might have encountered while on top of the crates. The evidence in this record indicates that the tops of these crates were made of pine boards which were between 1 and 1½ inches thick. It was also shown that longshoremen frequently walked along the top of these crates without using dunnage boards and, indeed, an expert testified that dunnage boards are never used on the tops of these crates when unloading. If the crate to be moved is obviously weak and damaged the longshoreman stands on adjoining crates. There is nothing in this record to indicate that a 1-inch pine board was incapable of supporting the weight of a longshoreman if the wood was in good condition. Thus, we conclude that, even assuming proof of Clark's improper stowage, Reddick's injury was due to defects in the crate not foreseeable by Clark and hence not caused by improper stowage."

Subsequently the Court of Appeals for this Circuit in Carabellese v. Naviera Aznar, S.A., 2 Cir., 285 F.2d 355, at page 359 (1960) reaffirmed the Reddick holding when it stated in part:

"In Reddick v. McAllister Lighterage Line, Inc., 2 Cir., 258 F.2d 297, 299, certiorari denied 1958, 358 U.S. 908, 79 S.Ct. 235, 3 L.Ed.2d 229, where again the injury was in the course of unloading, the majority held that unseaworthiness could be predicated not only on improper stowage, as in the cases just cited, but also upon a latent defect in a cargo crate which gave way when the plaintiff longshoreman stepped upon it. However, the majority noted that the crate had been in the owner's 'exclusive possession and control for the two days preceding the accident.' Since there was no evidence that the owner had known or could have known of the latent defect, this must have been designed to bring out that the crate had in effect become a part of the working surface supplied to the longshoreman, so that the owner would be liable for a latent defect in the crate

as he would for one in the deck or even, as was held in Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, for a misplaced cover which the injured longshoreman had himself installed over part of a hatch. The same principle underlies Rich v. Ellerman & Bucknall S.S. Co., 2 Cir., 1960, 278 F.2d 704. That, like the instant case, related to an injury sustained in loading, but the unseaworthiness lay in the stowage of truck chassis previously loaded which turned out to afford an unstable footing. Thus the chassis in Rich, like the crate in Reddick and the hatch cover in Grillea, had become, as was said in the Grillea case at p. 923 [of 232 F.2d], 'as much a part of the 'tweendeck for continued prosecution of the work, as though it had been permanently fixed in place.' "

As previously mentioned, in the case at bar the shipowner claims indemnity against the stevedore. A question presented for consideration is the duty or obligation of the stevedore to discover a latent defect.

In Ignatyuk v. Tramp Chartering Corp., 2 Cir., 1957, 250 F.2d 198, it appears that a rope parted due to a latent defect which could not have been detected by a cursory examination. Judge Medina writing for the Court, stated at page 201:

"The claim of indemnity here stems from the contract. We hold that an implied warranty of workmanlike performance by a stevedore does not place upon him a duty to discover defects in the apparatus or equipment furnished by the vessel being loaded or unloaded which are not obvious upon a cursory inspection. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099; Shannon v. United States, 2 Cir., 235 F.2d 457; Gucciardi v. Chisholm, 2 Cir., 145 F.2d 514; Liverani v. John T. Clark & Son, 231 N.Y. 178, 131 N.E. 881. The seaworthiness of the vessel is a quite different matter and so is the duty of the shipowner to provide a safe place to work."

In Pena v. A/S Dovrefjell, D.C., 176 F.Supp. 677, Judge Sugarman in denying a claim over stated:

"[A]n implied warranty of workmanlike performance by a stevedore does not place upon him a duty to discover defects in the apparatus or equipment furnished by the vessel being loaded or unloaded which are not obvious upon a cursory inspection."

In Yost v. General Electric Company, 173 F.Supp. 630 (S.D.N.Y., 1959), the Court held:

"On the issue of implied warranty of workmanlike performance we are satisfied that the slight visual inspection and examination of the chain by the employees of O'Brien, in addition to the suspension test that was made by them, would be sufficient to satisfy the duty owed by O'Brien inasmuch as they were not the suppliers of the equipment and to some extent were entitled to rely on the implied representation of the shipowner. That would defeat the claim of the United States for indemnity-over against it. See Ignatyuk v. Tramp Chartering Corp., 2 Cir., 1957, 250 F.2d 198, 201; see, too, Liverani v. John T. Clark & Son, 1921, 231 N.Y. 178, 131 N.E. 881."

In the cases cited by the shipowner, indemnity was allowed against the stevedore upon the ground of breach of the warranty of performance of workmanlike service coupled with evidence that such breach was the proximate cause of the injury and the danger was known or should have been known to the stevedore who failed to take proper precautions to alleviate the danger.

The holding in the Reddick case, supra, is applicable to the case at bar. The Ryan case is not in conflict.

The credible evidence is that the ship was loaded in Belgium; that from

Europe it crossed the North Atlantic during November and encountered heavy seas; that it just docked at Boston, then at the Brooklyn Army Base where the accident occurred; that the No. 1 hatch was opened; that the longshoreman viewed the cargo in disarray; that the wooden crates were of uneven size, some of them wobbly; that the hatch boss when apprised of this condition instructed the gang "to do the best you can"; that no dunnage was used for flooring; that the gang had to walk on top of the crates; that it was proper procedure during unloading to walk on top of this type of cargo; that the stevedore, having knowledge of this condition ordered the men to continue unloading; that they formed a so-called bucket brigade to avoid much walking over the cargo and permit the leadman to pick up a piece of cargo, turn around, take no more than two or three steps prior to handing the piece of cargo to the next man in the brigade who in turn passed it on to the next man; that the unloading continued for three and a half hours prior to the plaintiff's accident; that no other incident occurred subsequent thereto. The plaintiff's foot broke through a thin veneer case which he had walked upon prior to the accident.

Under these circumstances, there was no breach of the stevedore's warranty of performance of workmanlike service. The longshoreman faced with a condition of wobbly stowage acted reasonably in forming the bucket brigade to eliminate as much activity as possible.

The cargo was in the possession of the shipowner from the time it left Europe. There was no notice given by the shipowner to the stevedore concerning any latent defects in the wooden crates. There is no rule in this circuit requiring the stevedore to minutely examine apparatus or equipment for latent defects. If the improper stowage were the sole cause of the injuries then unquestionably the stevedore may be held liable for breach of warranty of workmanlike service. The accident might then have been the foreseeable result of improper stowage. As stated in the Reddick case, supra, "Under the general test of foreseeability applied to contractual liability, the breach must have been the cause of the injury. We think that in this case the latent defect in the board on the top of the crate was an intervening cause which broke any causal chain that might otherwise have existed." In the case at bar, the only result of improper stowage was to cause the gang to set up the bucket brigade. The plaintiff's injuries were due to the latent defect in the crate, not foreseeable by the stevedore and hence not caused by improper stowage.

The shipowner has failed to establish its indemnity claim against the stevedore.

Settle decree on notice.