**CALMAR STEAMSHIP CORPORATION,
a Delaware corporation, Defendant and
Third-Party Plaintiff, Appellant,**

v.

**NACIREMA OPERATING COMPANY,
Inc., a body corporate, Third-Party
Defendant, Appellee.**

No. 7804.

United States Court of Appeals
Fourth Circuit.

Argued March 13, 1959.

Decided April 8, 1959.

George W. P. Whip and Robert E. Coughlan, Jr., Baltimore, Md. (Lord, Whip & Coughlan, Baltimore, Md., on the brief), for appellant.

Jesse Slingluff, Jr., and Mathias J. DeVito, Baltimore, Md., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

This is an appeal from the District Court's judgment denying a shipowner indemnity from a stevedoring contractor for the amount recovered from the shipowner by an injured longshoreman-employee of the stevedore.

The longshoreman, Joseph Oleszczuk, was struck and injured by a cargo light which came loose from its cable when thrown into number 4 hold of the S. S. Portmar by a deckman who was also an employee of the stevedore. Oleszczuk brought suit against the Calmar Steamship Corporation, owner and operator of the ship, charging that his injury was due to the unseaworthiness of the vessel and the negligence of her owner. Calmar impleaded Nacirema Operating Co. Inc., the stevedore, as a third-party defendant, claiming indemnity for any amount which it might be obligated to pay Oleszczuk.

The evidence shows that the light which struck the plaintiff had a single bulb screwed into a large bell-shaped metal reflector, to which was joined a metal handle. A cable of electric wires passed through a small circular opening at the top of the reflector and the wires were supposed to be securely attached to terminal screws. It is customary, as an extra precaution, for the ship's crew to tape or tie the cable to the handle on the reflector in order to relieve the strain on the terminal screws. When so arranged, the lights are said to be "seized."

In accordance with the contract between the owner and the stevedore, the ship supplied the cargo lights. The one supplied for hold number 4, in which the plaintiff was working, had not been seiz-

ed. The stevedore's deckman not only accepted and used the unseized light, but threw it over the side of the hold so roughly that the light was jerked from the cable and fell into the hold, injuring the plaintiff.

In response to written interrogatories, the jury found that the ship's crew had been negligent in regard to the light, and that the light constituted an unseaworthy appliance. Both the negligence and the unseaworthiness were found to be proximate causes of the accident. The stevedore was also found to be negligent, both in having used an unseized light and in having lowered it in an unsafe manner. The latter was declared by the jury to be also a proximate cause of the accident.

A judgment for $35,000 was entered in favor of Oleszczuk against Calmar, and this recovery is not in issue here. The sole remaining question, whether Calmar is entitled to indemnity from Nacirema, was submitted to the District Judge with the understanding that the jury's findings would control "as far as they go."

The court ruled first that any claim which Calmar might have against Nacirema must be based upon the contractual relationship between them. Citing Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 441, 2 L.Ed.2d 491, the court said that a service contract such as the one here involved implies a promise by the expert stevedore to perform "with reasonable safety" and that this obligation relates not only to the handling of cargo, as in Ryan, but to the use of equipment incidental thereto, as in Weyerhaeuser. The District Court then held that the manner in which Nacirema had used the cargo light constituted a breach of this contractual duty.

Next, the court considered the limitation on the shipowner's right of indemnity, expressed by the Supreme Court in Weyerhaeuser in the words, "absent conduct on its part sufficient to preclude recovery." While it was pointed out that the Supreme Court had not yet specified what conduct on the part of the shipowner would be sufficient to preclude recovery, the District Court reasoned that, to bar recovery, the shipowner's conduct would have to amount to a breach of a contractual duty owed by it to the stevedore. The court then decided that while the contract involved here provided simply that Calmar would supply lights for night work, it was obligated to supply lights which were reasonably safe, and that those supplied failed to satisfy this obligation. In these circumstances, the court concluded that having breached the contract, Calmar's conduct was "sufficient to preclude recovery" of indemnity.

Since this decision by the District Court, however, the Supreme Court has adjudicated Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 448, 3 L.Ed.2d 413. While this also does not undertake a definitive statement of the conduct on the part of the shipowner which will bar indemnity, it indicates that furnishing defective equipment will not necessarily have that effect.

There, the ship supplied loading and unloading gear which included a safety cut-off device for the winch, set by the ship's crew at twice the rated limit of the rigging. This was said by the Supreme Court to be no different in principle from loading and unloading cargo with cable or rope lacking the test strength for the weight of the freight to be moved. The winch was found to make the vessel *pro tanto* unseaworthy. The Supreme Court said:

"For there is ample evidence to support the finding that these stevedores did no more than bring into play the unseaworthy condition of the vessel."

Nevertheless, the ship was allowed to recover over for the stevedore's negligence which was found to be a breach of its warranty of workmanlike service.

Dissenting, Justice Harlan declared that on the court's premises, that the stevedore merely brought into play an unseaworthy condition created by the vessel itself and that such unseaworthiness was the cause of Crumady's injuries, he did not think the decision or the underlying principles in Ryan justified an award of indemnity to the owner of the steamship "Fisser." This view, however, did not prevail and, as we are bound to conform to the majority view, the argument urged upon us by the stevedore cannot prevail here.

The stevedore attempts to distinguish Crumady, arguing that in that case the shipowner supplied adequate equipment but merely failed to make it safe against the negligence of the stevedore. A similar observation might be made here, for there is no way of knowing whether the cargo light would have come loose if the deckman had not thrown it into the hold roughly. In any event, we do not think that Crumady can be read in that manner, for the majority opinion clearly indicates that the equipment provided by the ship was itself considered unsafe and inadequate for the purpose for which it was supplied, and the case was decided on this view of the facts.

Nor do we think the cases distinguishable on the ground that here the triers of fact found that the supplying of defective equipment constituted unseaworthiness and negligence, while in Crumady the trier of fact found simply that the defective equipment made the ship unseaworthy but made no specific finding as to negligence. The claim was never raised by the plaintiff in Crumady that the shipowner was negligent in supplying an improperly set cut-off device.[1] The fact that such a finding was made in this case is not determinative of the right of the shipowner to recover indemnity. The action over is in contract, and whether the shipowner can recover turns upon whether his actions are such as to bar the enforcement of the contract, and not upon whether he has or has not been found negligent in regard to the longshoreman.

Of little consequence also is it that the actions of the stevedore were found by the District Court to be the primary cause of the accident in Crumady, while the District Court in this case found the actions of the stevedore only a contributing proximate cause. The Supreme Court in Weyerhaeuser pointed out "that in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." 355 U.S. at page 569, 78 S.Ct. at page 442.

In determining whether the actions of Calmar were such as to bar recovery, we must necessarily compare them to those of the owner in Crumady. Here, the ship did not inspect the light and did not provide seizing. In Crumady the ship's crew supplied a cut-off device which they had set at twice the rated limit of the rigging. Certainly supplying the defective cut-off device was no less a contractual violation there than the supplying of the unseized cargo light here. If the former did not preclude recovery, then, under the principle announced in Crumady, we think the latter should not.

Reversed, with direction to enter judgment for Calmar Steamship Corporation.

1. The claim was that the ship was negligent in supplying a worn and defective topping lift. The District Court's finding was to the contrary on this issue. The Circuit Court pointed out that the District Court's finding of unseaworthiness in regard to the incorrectly set cut-off device was based upon a theory which the libellant had not pleaded or attempted to establish in his proof. The appellate court found on the facts that the setting of the cut-off device did not make the winch unseaworthy, but the Supreme Court disagreed and restored the District Court's finding of unseaworthiness.