**AMERICAN EXPORT LINES, INC., a foreign corporation, Libellant,**

**v.**

**ATLANTIC & GULF STEVEDORES, INC., a corporation, Respondent.**

**No. 8016.**

United States District Court
E. D. Virginia,
Norfolk Division.

June 7, 1962.

Seawell, McCoy, Winston & Dalton and John W. Winston, Norfolk, Va., for plaintiff.

Rixey & Rixey and William B. Eley, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

This is an action by a shipowner, American Export Lines, Inc., hereinafter called "Export", seeking indemnity from a stevedore, Atlantic & Gulf Stevedores, Inc., referred to as "Atlantic", for breach of a contract pertaining to stevedoring services.[1]

The S. S. Exceller, owned and operated by Export was the subject of this stevedoring contract on September 30, 1956. A gang of longshoremen, of which Alton Mosley was hatch boss, was employed to load cartons of cheese into the forward end of No. 5 hatch of the vessel. John W. Shell was the burton winch operator for the gang. David W. Hardy operated the up-and-down winch. Daniel Johnson acted as signalman or gangwayman. Arthur Harper was a holdman.

The work of loading that hatch began at least by 8 A.M. on September 20. At about 10:50 A.M. on that date, a draft of cheese while being brought on board by the longshoremen struck the coaming of the hatch and some of the cartons fell into the hold, striking and causing serious injuries to Arthur Harper.

What caused the draft to strike the coaming is vigorously disputed. The longshoremen testified that both cargo winches at the forward end of the hatch were defective in that the magnetic brakes did not hold and allowed each draft to drift to a stop. They said the mechanical foot brakes were frozen. They said this condition was known to the winch operators, signalman, hatch boss, and stevedore foreman of Atlantic for at least 2½ hours before the accident; that the stevedore foreman said "keep on working" and they did so. They did this, they said, even though the brakes were not repaired before the accident, though a ship's mate had promised to send the electrician but did not do so. They testified that the fatal draft drifted into the coaming after they attempted to stop it over the deck in mid-air by applying the magnetic brakes.

The stevedore foreman, on the other hand, testified that no complaint was made to him about the winches, that the work proceeded without incident until the accident and for the rest of the day thereafter. The present Norfolk manager of Atlantic, E. J. Adams, testified that he saw the accident, that the longshoremen swung the fatal draft over the deck and that they then moved it without stopping in the direction of and then

---

[1] By written contract dated September 20, 1956, Atlantic agreed, among other things, to (1) provide all necessary stevedoring labor, including winchmen, etc., foremen and such other stevedoring supervision as were needed for the proper and efficient conduct of the work, (2) discharge cargo from or load cargo into vessel's holds, 'tween decks, etc., (3) work two gangs simultaneously in hatches when required if necessary equipment is available. The court recognizes that there is also an implied contract to perform the stevedoring services in a safe and workmanlike manner.

into the hatch coaming, at which point it upset and cartons spilled into the hold, striking and injuring Arthur Harper. The manager's testimony clearly indicated that the longshoremen failed to raise the draft to sufficient height, thus permitting it to strike the coaming instead of passing above it.

The foregoing was substantially the testimony adduced at the trial in which Harper instituted a civil action against Export alleging negligence on the part of Export and unseaworthiness of the Exceller. Both issues were submitted to the jury under an appropriate charge. The jury returned a general verdict in favor of Harper in the sum of $25,000.00. No special interrogatories were requested or submitted. It should be noted that Atlantic was not a party to this action, either as an original or third-party defendant. Indeed, Atlantic could not have been sued by Harper due to the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

On June 28, 1957, Atlantic wrote Export asserting a lien for compensation benefits paid to Harper. Atlantic knew that Harper's action had then been filed. On May 15, 1958, only 25 days prior to trial, Export invited Atlantic to defend Harper's action against Export. Atlantic declined, stating in part, " * * * there is nothing in our file to indicate that we should accept your invitation to defend American Export Lines, Inc." During the trial of Harper's action from June 10–13, 1958, counsel for Atlantic was present as an observer. No effort was ever made by Export to join Atlantic as a third-party defendant. Subsequent to the entry of judgment Export, on June 24, 1958, requested Atlantic to pay the judgment or appeal. Atlantic promptly declined. On July 29, 1958, Export paid the judgment, interest and costs aggregating $25,371.72. Legal fees and expenses incurred by Export in the defense of Harper's action amount to $6,213.65. This indemnity action was thereafter instituted seeking the recovery of $31,585.37, plus interest at 6% per annum and the taxable court costs of the pending litigation.

The testimony at the indemnity trial was substantially identical to the original action; the essential difference being that the indemnity action is in admiralty with no jury, whereas Harper's case was on the civil side of the court and heard before a jury. Thus we have different triers of fact and, as frequently happens, there are contrary findings. The clear preponderance of the evidence is that the sole proximate cause of the accident was the negligence of Harper's co-employees, Shell and Hardy, in the operation of the winches. Nevertheless, there was evidence to go to the jury in the Harper case on the issues of negligence and unseaworthiness but, if the court had been the trier of fact, Harper would not have recovered against Export. The jury had been instructed in Harper's action that if the sole proximate cause of the accident was the negligence of Atlantic's employees, there should, of necessity, be a finding for the defendant, Export. The jury concluded that either Export was negligent or the vessel was unseaworthy, or both.

Export was at liberty to file a third-party complaint against Atlantic, as a third-party defendant, in the Harper action. This, for reasons of its own, it did not do. If such a third-party complaint had been filed, Atlantic was then entitled to the benefit of a jury trial on the issue as to whether it had performed its stevedoring contract in a workmanlike manner and with reasonable safety. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. In Weyerhaeuser, a third-party action, a jury had found for the longshoreman against the shipowner on the issue of negligence only. After receiving the verdict, the district court held that the verdict was dispositive of the third-party action and directed a verdict for the stevedore. The Supreme Court held that the issue of the stevedore's alleged failure to perform its contractual undertaking with reasonable safety constituted a jury question.

As pointed out in Weyerhaeuser, the issue as to the stevedore's breach of contract was not encompassed by the instructions in Harper's case against Export. The jury, in Harper, could have concluded that the winches were unseaworthy—an event for which the stevedore would not be liable unless such defect could have been ascertained by the stevedore in the exercise of reasonable inspection of the equipment, Smith v. Jugosalvenska Linijska Plovidea, 4 Cir., 278 F.2d 176, or unless the negligence of the stevedore brought the unseaworthiness of the vessel into play, Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. In the present case, the jury could have concluded that the magnetic brakes on the winches became defective at the moment of the accident. If so, the vessel would have been unseaworthy, but without any breach on the part of Atlantic. Unlike Crumady, where the ship furnished the stevedore with a boom rigged for three tons with its winch set by the ship's crew to cut off at six tons, which was twice the rated limit of the rigging, the unseaworthiness of the winches in the present case could have been occasioned by an instantaneous defect which, under Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, would have imposed absolute liability upon Export. We do not suggest that the jury in Harper's action arrived at this finding; we only say that it is one possible conclusion reached.

In the recent case of Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798, the Supreme Court held that a jury verdict for an injured longshoreman against the shipowner, in a federal diversity case, did not require the trial court to enter judgment over for the shipowner against the impleaded stevedore, unless the jury verdict implied a finding that each possible ground of the shipowner's negligence involved a breach of the stevedore's duty as a matter of law. There, unlike the present issue, special interrogatories were submitted to the jury with findings of negligence and unseaworthiness on the part of the shipowner and the vessel, but with other findings that the stevedore did not breach its contractual obligations with the shipowner. While there is considerable discussion of the rights reserved to suitors as to a jury trial, by analogy the principles are similar.

We conclude, therefore, that the verdict and judgment in the Harper case—to which Atlantic was not a party—does not, as a matter of law, impose liability upon the stevedore in this indemnity action instituted in admiralty. As heretofore indicated this court, if it had been the trier of fact in Harper, would have determined that the sole proximate cause of the accident was the negligence of the stevedore's winch operators—negligence for which Harper was precluded from asserting in his action and for which he could not have recovered.

The question of the finality of the results in Harper's action is admittedly a controversial subject among legal experts. In Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784, 795, it is said:

"If the indemnitor was not a party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, or where, being under such a duty, he was not given reasonable notice of the action and requested to defend, neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action. Where, on the other hand, the indemnitee and the indemnitor are codefendants actively participating in the defense of the original action, or where the indemnitor, with notice of the action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee, then in subsequent litigation between them both indemnitor and indemnitee are

bound by the findings necessary to the judgment in the action."

■ To the foregoing general statement of law this court subscribes. While we are unable to determine how and why the result of a general verdict of a jury in Harper will impose liability upon Atlantic as a matter of law, we do not believe that Export has brought itself within the latter portion of the foregoing quoted language, even if we were to assume that the findings are binding upon Atlantic. Export's invitation to defend came less than one month prior to trial, which was approximately 21 months after the accident, 11 months after suit had been instituted by Harper, and many months after the trial date had been fixed at a pre-trial conference attended by counsel for Harper and Export. Export's investigation and pleadings clearly indicated that Export was not liable for negligence and that the vessel was not unseaworthy. If we assume that Atlantic's investigation revealed only negligence of its winch operators, there would be no liability on Export and no maintainable action by Harper against Atlantic. Can it be said that in any action against a shipowner involving an injury to a longshoreman sustained during stevedoring operations, irrespective of merit, the stevedore is required to appear and defend in behalf of the shipowner, or otherwise suffer the consequences? We think not. The very purpose of the third-party action is to prevent needless multiplicity of litigation. American Stevedores v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011; Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., supra. To permit Export to sit back, without filing a third-party complaint, and then reap the possible benefits of disputed litigation, but if unsuccessful look to the alleged indemnitor and contend that the indemnitor is financially obligated by the adverse results, would, in the opinion of this court, do violence to the spirit of third-party practice. It would permit a choice of forum by the alleged indemnitee in that he may then sue in ad-

miralty to avoid the pitfalls of a jury verdict. The stevedore, although admittedly held liable ultimately for many shipboard accidents to longshoremen, is not an insurer of the shipowner, either by way of defense or by way of indemnity.

The case of Curtis v. A. Garcia y Cia, 3 Cir., 241 F.2d 30, and the later action entitled Curtis v. A. Garcia y Cia, 3 Cir., 272 F.2d 235, contain an interesting discussion as to the legal effect of related proceedings. In 1952, six longshoremen were injured and one killed while engaged in discharging operations aboard Garcia's vessel which was then being unloaded by Jarka, the stevedore. A third-party complaint was filed by Garcia against Jarka but was dismissed and subsequently reinstated. However, during the trial of the civil action filed by the longshoremen, Jarka was a party to the proceeding until the close of all the evidence when Jarka's motion to dismiss was granted. Hence there was no finding by the jury as to Jarka. The jury did conclude that Garcia's negligence was a contributing factor in bringing about the accident, but also found that there was no unseaworthiness on the part of the vessel which was a contributive factor. While expressing some doubt how, under the facts there presented, the jury could conclude that the cargo was stowed in a manner which did not create a dangerous condition, the court of appeals affirmed the verdict by reason of abundant evidence supporting the finding as to Garcia's negligence.

When Garcia's third-party complaint against Jarka was reinstated and the indemnity trial proceeded, another jury found that the method of unloading used by Jarka was negligent, but further found that this was a customary method of unloading at the port of Philadelphia. The jury further found that the negligence of the shipowner, Garcia, resulted from a failure of Jarka to perform its obligation to discharge cargo in a reasonably safe manner. Jarka, contending that the finding of Garcia's negligence at the first trial was binding, urged that

the question was not open for re-litigation at the trial of the third-party claim. The court of appeals held that the failure of the jury in the first case to specify or clearly indicate what conduct of Garcia constituted negligence prevented the judgment in the first case from providing any proper basis that the issue of Garcia's negligence had become *res judicata*. On rehearing before the court *en banc* the original decision was adhered to, and the court said (272 F.2d 241):

> "While the original judgment on the principal claim, as affirmed, left the jury's finding of negligence of the original defendant [shipowner] as an authoritatively established fact for purposes of the retrial of the third-party claim, it would be unfair to go further and employ mere judicial comment on the evidence made on the original appeal in the absence of the third-party defendant as a pronouncement binding against the absentee."

■ Applying these principles to the instant case, the jury's finding as to Export's negligence and the unseaworthiness of the S. S. Exceller are final and binding in the trial of the indemnity action as the same may apply to Export. Assuming arguendo that there was no duty on the part of the Atlantic to come in and defend, Atlantic is entitled to separate findings, if supported by the evidence, as to the cause of the accident in which Harper was injured. To hold otherwise would completely refute the holding in Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd., supra. While the effect of this pronouncement leaves Export saddled with a judgment for an injury caused solely by stevedore negligence, it must not be overlooked that Export had ample time and means to bring Atlantic before the court as a third-party defendant and the rights and liabilities of all parties could then have been resolved under an appropriate charge together with the submission of special interrogatories.

To accept Export's contention that the findings by the jury in Harper are binding will result in a completely inconsistent position. If the jury had specifically concluded that the vessel was unseaworthy, we must assume that such unseaworthiness existed in the winches. There was, of course, a contractual requirement on the part of Export to furnish Atlantic with winches in proper working condition. If Export breached its contract in this respect, and if such breach caused the accident to Harper, Export could not then recover by way of indemnity. Certainly Export, in a separately instituted indemnity action, would not expect to be bound by such a finding. By the same token, as Export has now selected a separate trier of fact, Atlantic is entitled to independent findings as to the cause of the accident.

We do not believe that the holding in this case is essentially in conflict with certain decisions of the Fourth Circuit[2] especially in light of the recent opinion of the Supreme Court in Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd., supra. Nor can we agree, in light of the foregoing decision, that the shipowner need only establish a potential liability to the injured longshoreman and some negligent conduct on the stevedore's part contributing to the longshoreman's injury to recover upon the theory of indemnity as stated in California Stevedore & Ballast Co. v. Pan-Atlantic S. S. Corp., 9 Cir., 291 F.2d 252.

■ As this court arrives at a contrary conclusion from that of the jury in Harper's action and now finds that the sole contributing factor causing the accident was the negligence of the winch operators, and as the court further finds that, under the facts of this case, Atlantic was not required to take over the

2. Farm Bureau Mutual Auto Ins. Co. v. Hammer, 4 Cir., 177 F.2d 793; Revel v. American Export Lines, Inc., D.C., 162 F.Supp. 279, aff. 4 Cir., 266 F.2d 82; Calmar S.S. Corp. v. Nacirema Operating Co., 4 Cir., 266 F.2d 79; General Electric Co. v. Moretz, 4 Cir., 270 F.2d 780.

**322**

defense of Harper's action, the libel will be dismissed. In the confusing field of law relating to indemnity actions by shipowners against stevedores, a more authoritative clarification of the rights of the respective parties would be gratifying.

Proctors for the respondent will prepare and present, after opportunity for inspection and endorsement, an appropriate decree. The court adopts this memorandum in lieu of specific findings of fact and conclusions of law.