Joseph PETTUS, Plaintiff-Appellee,

v.

GRACE LINE, INC., Defendant and Third-Party Plaintiff-Appellee,

v.

SEALAND DOCK & TERMINAL CORP. and Federal Stevedoring Co., Inc., Third-Party Defendants-Appellants.

No. 187, Docket 27209.

United States Court of Appeals Second Circuit.

Argued Jan. 10, 1962.

Decided June 27, 1962.

Joseph P. Feury, New York City (Thomas H. Healey and Monica & Feury, New York City, on the brief), for third-party defendants-appellants.

Robert Klonsky, Brooklyn, N. Y. (Di-Costanzo, Klonsky & Sergi, Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Thomas Coyne, New York City (Kirlin, Campbell & Keating, New York City, on the brief), for defendant and third-party plaintiff-appellee.

Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Plaintiff, Joseph Pettus, a longshoreman, was struck by a draft of coffee bags on August 20, 1955, while unloading the S.S. Santa Olivia at the Java Street pier in Brooklyn, New York. As a result of this injury he brought an action against Grace Line, Inc., owners of the ship, alleging that his injuries were caused by the negligence of the shipowner, its agents and employees, and by the unseaworthy condition of the vessel. Jurisdiction was grounded on diversity of citizenship. Grace Line, Inc., in turn impleaded Sealand Dock & Terminal Corp. and its agent, Federal Stevedoring Co., Inc., plaintiff's employer (the stevedoring companies). The third-party complaint set forth the claims made by plaintiff and alleged that in the event plaintiff recovered from Grace Line, Inc., the shipowner would be entitled to indemnification from the stevedoring companies to the full extent of any judgment recovered by plaintiff, including costs.[1] Both claims were tried to a jury. The jury found that the ship was "unseaworthy with negligence" and awarded $20,000 in damages to the plaintiff.[2] It also found in favor of the third-party plaintiff, Grace Line, Inc. The court found that the third-party plaintiff was entitled to reasonable attorney's fees, and by stipulation the parties agreed that this sum should be set at $4,000. This appeal followed.

The facts are these. The S.S. Santa Olivia docked at the Java Street pier at 3:00 P.M. on August 18, 1955. At 9:05 P.M. that day two gangs of longshoremen started discharging a cargo of coffee in bags at No. 3 hatch, and continued

---

1. Grace Line, Inc., alleged four causes of action: (1) that any injury to plaintiff was caused by the primary fault of the stevedoring companies, thus entitling Grace Line, Inc., to common-law indemnification; (2) that the stevedoring companies were obligated by explicit contractual agreement to indemnify the shipowner for all loss occasioned by the negligence of the stevedoring companies; (3) that the stevedoring companies had breached an explicit contractual duty to see that the work was conducted in a proper and efficient manner; and (4) that the stevedoring companies had breached a further contractual obligation to perform the work in a safe, proper, and competent manner, and that either or both of these breaches of duty resulted in plaintiff's injuries.

2. The record shows disagreement, not resolved by the colloquy with the foreman, as to what this finding of the jury meant. In the light of the verdict for the third-party plaintiff, it is not possible to say whether "negligence" here referred to that of the shipowner or the stevedores. Thus while we can assume that the jury found the ship unseaworthy, we do not know whether they considered the shipowner negligent.

unloading, with interruptions caused by rain, until 5:25 P.M. on August 20, 1955. They unloaded the coffee, in drafts of twelve 140 lb. bags, by means of a married falls rig which utilized two booms and winches. The winches were operated from a central point; and as the winch operator could not see over the side of the vessel to the dock, a signalman was employed to indicate to the winchman when to stop lowering the drafts. There was considerable evidence that throughout the operation the electric Burton winch at No. 3 hatch malfunctioned, due to a defective brake which permitted the winch to pay out three or four feet of cable after it was applied.[3] Despite this malfunction the longshoremen continued the unloading operations; the signalman compensated for the malfunction by giving the stop signal several feet above the normal cutoff point. There was evidence that the stevedores' hatch boss observed the winch failure, but did not stop the operation. The longshoremen testified that both the ship's electrician and the cargo mate were notified of the malfunction some time before the accident, but that no repairs were made. It was not clear from the evidence whether the defect developed before or after the stevedores came on board.

At the time of the accident, approximately 6:30 A.M. on August 20, Pettus and others were standing on the dock unloading the drafts as they were lowered. The draft which struck Pettus jerked and jumped when the brakes were applied five or six feet above the dock, then continued to drop, hitting Pettus on the shoulder and pinning him to a pallet.

Defendant Grace Line, Inc., does not contest the jury verdict against it; and while the third-party defendants, the stevedoring companies, contend that the jury verdict in favor of plaintiff was contrary to the facts and law, we find these claims insubstantial, and affirm the judgment in favor of Pettus.

The material issues on this appeal are those raised by the stevedoring companies' appeal from the judgment for Grace Line against them on the third-party complaint. Since we find the evidence before the jury to have been sufficient to support a verdict on the charge as given, and find no error in the award given for attorney's fees, question remains only as to the propriety of the charge. Appellants attack four aspects of the charge: (1) the instruction that negligence on the part of Grace Line would not preclude its recovery over; (2) the refusal of the third-party defendants' request to charge that "if the winches were defective \* \* \* then the shipowner breached its contract to provide adequate winches and cannot recover over against the stevedore"; (3) the refusal to instruct that, in order to recover any indemnity, the third-party plaintiff "must prove \* \* \* that he has performed all conditions imposed by [the stevedoring] \* \* \* contract on himself"; (4) the instruction that there was an implied warranty on the part of the stevedoring companies that they would perform their services in a workmanlike manner.

■ We reject all these claims of error. As to the first, it is sufficient to point out that no objection whatever was made at the trial to the judge's use of this language. The other objections, having been sufficiently raised below, require somewhat more discussion.

■ The second attack on the charge must be rejected because the language used by the trial judge properly stated the law and that suggested by the third-

3. Harvey C. Roberts, the winch operator, testified that in several instances when a draft was being lowered over the side the winch would slip three or four feet after the brakes were applied. The relief signalman, Ward, who had operated the winch the morning before the accident, testified that at that time the brake was not working and that the drum continued to unwind after the lever had been placed in neutral. Defendant introduced substantial evidence indicating that the winch was in good condition before and after the accident, but this testimony was obviously rejected by the jury.

party defendants did not. To be sure, since the claim for indemnity is based on the stevedoring contract, a material breach of that contract by Grace Line would preclude its enforcing the contract to recover indemnity. See Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). But the mere fact that Grace Line failed to fulfill its duty to "supply * * * adequate winches, in good order" did not, without taking the circumstances into consideration, by itself make it guilty of such a material breach. Calmar S. S. Corp. v. Nacirema Operating Co., 266 F.2d 79 (4 Cir. 1959); cf. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). We do not find Hagans v. Farrell Lines, 237 F.2d 477 (3 Cir. 1956), which held a shipowner's indemnity claim against a stevedoring company barred because of its breach of its contractual obligation to provide proper winches, to be an obstacle to this holding. That case was decided before Crumady v. The Joachim Hendrik Fisser, supra, made the law clear that unseaworthiness would not bar indemnity based upon the negligence of a stevedoring company, and moreover the court in Hagans held that "the jury must * * * have concluded that the defective winch was the substantial cause of the accident, and that the negligence of [the stevedoring company's] * * * employees was not a substantial cause of the accident." 237 F.2d at 477, 480.

■ Whether or not the shipowner's failure to repair a defective winch after notice from the stevedores would prevent indemnity, or whether or not a counterclaim might lie for damages caused the stevedores by the initial failure to provide proper winches, as suggested in Judge Clark's dissent, are matters not raised for our consideration. The requested instruction did not suggest to the trial judge what might be the effect of such complicating factors, and we find no intimation in the pleadings or the record of any attempt to assert a counterclaim. The only issue raised by the requested instruction was whether or not the simple fact of supplying defective winches was without more a bar to indemnity, and there can be no question that it was not.

■ The only other objection relating to the effect of Grace Line's claimed breach of contractual duty which has been preserved for our consideration is that made to the trial court's refusal to instruct the jury that in order to recover indemnity under the contract it "must prove * * * that [it] * * * has performed all the conditions imposed by said contract." It would, of course, have been improper to charge in this suggested language, since the statement is incorrect law if a layman's interpretation is given to the word "conditions." It is elementary, as we have just noted, that Grace Line's failure to perform any one of its duties under the contract would not necessarily bar any enforcement of the contract against the stevedoring companies.

If the word "conditions" is understood in its technical legal usage as denoting those covenants whose non-performance by Grace Line would have excused the stevedoring companies from all performance, see Restatement, Contracts §§ 250, 255 (1932); 3A Corbin, Contracts §§ 627, 628 (1960), then the sentence, though accurate, becomes a mere tautology. As such, the request was so general as to communicate nothing to the trial judge concerning the theory which the third-party defendants wished him to apply. Whether or not the record was such as to require the trial judge to instruct the jury to consider whether Grace Line's alleged failure to repair reported defects in the winch so interfered with the stevedores' performance as to constitute "conduct on its part sufficient to preclude recovery," [4] as Judge Clark's dissenting opinion suggests, the requested instruc-

4. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958).

tion did not present that issue to him. And there was no other objection to the charge which bore upon the issue.

In order to preserve for our consideration the question of a possible material breach in hindering the stevedoring companies' performance, it would have been necessary for the appellants' counsel to take some action at trial to bring this theory to the judge's attention. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. states that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We cannot by any stretch of the imagination regard the stevedoring companies as having made any relevant "distinct" request or objection. See, e. g., Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Massachusetts Bonding & Ins. Co. v. Ray Dilschneider, Inc., 203 F.2d 556 (8 Cir. 1953); Flint v. Youngstown Sheet & Tube Co., 143 F.2d 923, 925 (2 Cir. 1944).

Finally, the third-party defendants assert that the trial judge erred in charging that the stevedoring companies warranted workmanlike performance. The essence of this contention is that the presence in the contract of an express clause pertaining to the liability of the stevedores [5] negates the usual implied-in-fact warranty of workmanlike service, Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). We do not agree.

The stevedoring companies explicitly promised to provide all labor and supervision necessary "for the proper and efficient conduct of the work" and agreed to provide full stevedoring services for Grace Line's ships. Similar language

has been held to constitute a contractual warranty of workmanlike performance. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., supra, 355 U.S. at 565, 78 S. Ct. 438. The indemnity clause here defines the scope of liability for the stevedores' negligence and includes a guaranty that the stevedoring companies will carry sufficient insurance to cover losses arising out of the contractor's negligence. It does not explicitly disavow the obligations created by the other provisions. In the absence of an express disclaimer we cannot construe this clause as disavowing the fundamental obligation to provide workmanlike service.

Affirmed.

CLARK, Circuit Judge (dissenting).

I must disagree with my brothers' holding as to the permissible scope of appellate review of possible errors in the trial court's charge. Grace Line, Inc., contracted with third-party defendants to provide adequate winches to the stevedores unloading its ships, and there was evidence in the record that the winches actually furnished were defective. The clear import of the trial court's charge was that provision of defective winches would not affect Grace Line's right to recover over from the stevedoring companies for breach of their warranty of a workmanlike performance. The third-party defendants requested charges (1) that if the winches were defective the shipowner breached its contract and could not, therefore, recover over against the stevedoring companies and (2) that it could recover only if it proved that it had performed all conditions imposed upon it by the stevedoring contract. Timely exceptions were taken to these refusals to charge. By their requested charge and exceptions the third-party defendants clearly indicated to the trial judge that they did not accept his theory of their liability. My brothers concede

5. "While performing the work the contractor shall be responsible for any and all loss, damage or injury, (including death to persons), cargo, vessels, their stores, apparel [sic] or equipment, wharves, piers, dock, lighters, barges, scows, elevators, cars, carfloats, or other property or thing arising through the negligence or fault of the contractor, its employees, gear or equipment."

that provision of defective winches would constitute a breach of contract; nevertheless they reject all claims of error in the charge.

Actually my brothers have admitted that the charge was erroneous. They cannot and do not say that no remedy is available for the shipowner's breach. Thus they tacitly concede that the trial court's charge, which admitted of no such remedy, was an erroneous statement of the law. They find no error and avoid determining the proper remedy not because the third-party defendants did not assert a proper legal theory—which they did—but because their requested charge asked for what the court now determines was the wrong remedy! Because I believe this opinion to be a harsh and unnecessary restriction on our appellate jurisdiction, denying a fair appellate hearing to the third-party defendants, I must dissent.

The question of the effect of a shipowner's breach of the stevedoring contract on its right to indemnification has never been decided in this circuit. Indeed there is only one case in which any court has considered this precise issue, and that is the Fourth Circuit in Calmar S. S. Corp. v. Nacirema Operating Co., 4 Cir., 266 F.2d 79. Thus to have requested the correct remedy for the shipowner's breach the third-party defendants would have had to exercise superhuman prescience and have guessed which of several possible methods of resolving the problem this court would elect. Because the stevedoring companies chose the wrong method—claiming breach would be a total bar to suit—the majority now holds that appellate consideration of other remedies is foreclosed.

This approach is inconsistent with Rule 46 of the Federal Rules of Civil Procedure. Under F.R. 46, an exception is sufficient if the party makes known to the court his objection to any action and the reasons for the objection. Since the function of the exception is notice to the court, the test of sufficiency of an exception is whether from the circumstances it was clear to the court that the objector disagreed with its action. 5 Moore's Federal Practice ¶46.02, p. 1904 (2d Ed.1951). Here the third-party defendants made it abundantly clear that they disagreed with that aspect of the court's charge which indicated that the shipowner's failure to provide adequate winches did not affect its rights vis-a-vis the stevedores. And they also made it clear that the ground of this disagreement was that such a failure would be a breach of contract. So we should turn to see what remedy, if any, is available to the stevedores as a result of a breach of contract by the shipowner.

I agree with my brothers that failure to provide winches here would not constitute a material breach of contract, and thus would not excuse nonperformance by the stevedores. Such a breach, however, would give the stevedores a right of action for damages. Mowbray v. Merryweather, [1895] 2 Q.B. 640 (C. A.). Therefore the charge, read in the light of the denial of defendants' request, was erroneous. For this reason we should reverse and order a new trial. At this trial the proper remedy for the third-party plaintiff's breach could of course be raised by counterclaim. F.R. 13(a). The measure of damages in such a situation would be the foreseeable pecuniary loss caused by the breach, which in this case would be that portion of the damages paid to Pettus attributable to the shipowner's wrongful provision of inadequate equipment. Cf. Mowbray v. Merryweather, supra, [1895] 2 Q.B. 649 (C.A.); Restatement, Contracts § 330 (1932); 5 Corbin on Contracts §§ 1006–1013 (1951).

Hence I would reverse and remand for a new trial on the question of the liability of the stevedoring companies to Grace Line, Inc.