WESSINGER, County Treasurer, et al. v.
STURKIE et al.

KRUPNICK v. PEOPLES STATE BANK OF
SOUTH CAROLINA et al.
No. 3846.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1935.

George Bell Timmerman and R. Milo
Smith, both of Lexington, S. C., for appellants.

D. W. Robinson, Jr., of Columbia, S. C.
(Robinson & Robinson, of Columbia, S. C.,
on the brief), for appellees.

Before PARKER, NORTHCOTT, and
SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from two orders entered in the District Court of the United
States for the Eastern District of South
Carolina, on March 5, 1934, and November
7, 1934, allowing the appellees certain attorneys' fees.

In 1932, in the suit of Krupnick v. Peoples State Bank et al., in equity, the court
below had appointed receivers for said
bank, and since that time two of the receivers so appointed have been engaged in
the administration of the affairs of the bank
in accordance with the order of the court.
Prior to the closing of the bank and in the
due course of business, the bank had become the owner and holder of certain notes
of Cherokee county, S. C. These notes
were, in October, 1931, pledged to the
treasurer of Lexington county, S. C., as
security for deposits of that county in said
bank. The securities thus pledged were delivered to the trust department of the Peoples State Bank under a contract setting
forth the securities held and binding the
bank to hold them as security for the deposit until released from the trust by the
treasurer of Lexington county. In June,
1932, after the closing of the bank and the
appointment of the receivers, the treasurer
of Cherokee county filed a petition in the
cause in which the receivers had been appointed, setting up the alleged right of
Cherokee county to set off the amount of
its deposit in the said bank against its obli-

gations held by the bank but pledged to secure the deposit of Lexington county.

The treasurer of Lexington county and that county were represented by the appellees as attorneys. A petition was filed setting up the pledging of the securities to secure the deposit of Lexington county. The receivers also made returns to the petition of the treasurer of Cherokee county and that county. After a hearing the judge below dismissed the petition of Cherokee county and its treasurer and authorized the sale of the pledged securities for the benefit of Lexington county. The judge held that the pledge to secure the deposit of Lexington county was a valid one and that neither Cherokee county nor the receivers of the bank were entitled to the securities pledged.

In March, 1934, the appellees filed an ex parte petition praying the court to fix their fees in defending the claim of Lexington county, and asked that the court direct the treasurer of that county to pay the sum fixed by the court as compensation. On March 5, 1934, a summary order was issued by the judge granting the prayer of the petition and ordering the treasurer of Lexington county to forthwith pay out of funds in her hands the sum of $2,500 to the appellees as fees in the litigation. On March 9, 1934, the judge entered an order suspending the order of March 5, pending a hearing of the matter, and fixing a date when the appellants should appear and present such matters as they wished to present with regard to the fees.

At the hearing the appellants filed a response, setting up, among other things, that they had never been served with notice of the petition; that neither the appellants nor the appellees were nonresidents of the state of South Carolina; that a summary proceeding could not be maintained against them for judgment for the fees in question; that a summary judgment could not be legally entered against them in the manner attempted; that the only proceeding that appellees could maintain against them would be one in the nature of an action of debt or assumpsit; that if appellees had any right of action against appellants it was one at law, upon the hearing of which appellants would be entitled to a jury trial; that the court did not have the power to fix the fees or issue the order prayed for and was without jurisdiction of this particular matter; and that appellees had an adequate remedy for the collection of their fees at law, the cause in which the petition was filed being a suit in equity, the court, therefore, was without jurisdiction. Later, on November 7, 1934, the judge entered a final decree giving the appellees judgment against the appellants in the sum of $2,000, and directed the treasurer of Lexington county to forthwith pay said sum to the appellees. From this order this appeal was brought.

The only question involved is whether the court below had jurisdiction of the matter in controversy and authority to fix the fee of appellees as attorneys and order the payment of the fee so fixed.

That under certain circumstances attorneys, who are officers of the court, will be protected by the court in the collection of their fees is not to be doubted. This is ordinarily done on the theory that attorneys have a lien upon any fund in the hands of the court or being administered by the court or that has been brought into the court by their efforts, for the value of the services rendered. Here we have a case where the attorneys came into the suit, in which the receivers had been appointed, to defend the claim of their clients to the possession of certain securities pledged for a county deposit as was required by the statutes of South Carolina. The attorneys were merely defending the rights of their clients to the possession of the securities or the proceeds thereof. They had no contract contingent or otherwise as to the amount of their fees, and they were not endeavoring to bring any fund into the possession of the court for the benefit of their clients or any one else. On the contrary, they were asserting the right of their clients to the possession of the securities in question as against Cherokee county and the receivers of the court. They were successful in their efforts on behalf of their clients and are entitled to a fair fee, but we can find no authority that sustains the proposition that, under the circumstances existing here, the court that decided the question, and decided that neither the receivers of the court nor Cherokee county had any right to the securities, has any authority to fix the fees of the attorneys for the successful defending litigants.

The attorneys were in no sense parties or quasi parties to the suit; they had no fee dependent upon their clients' success in setting up their rights to the pledged securities; they brought no fund into the court,

nor were their services exerted on behalf of any one other than their clients; they simply defended the right of their clients to the security (a right contested by other parties); they had no lien for their fees, statutory or implied; and the court below was administering no fund, nor was it ordering any payment from any fund, having decided that neither its own officers (the receivers of the bank) nor Cherokee county, the petitioner, were entitled to the possession of the fund.

The decision of the court as to the securities was that there was no trust fund under the control of the court through its receivers, and it is difficult to see how the power of the court could extend to something which was not under its control to the extent that it could summarily decree a payment from the fund.

It is evident that, even were the appellees parties to the suit, jurisdiction over them could not be maintained on the theory of diversity of citizenship, and it is also plain that if these attorneys had any remedy it was at law and that their clients, in the event of disagreement as to the amount of their fees, were entitled to a trial by jury. Wright v. Ellison, 1 Wall. 16, 17 L. Ed. 555, and cases there cited.

It seems well settled, and without authority to the contrary, that an attorney merely defeating a recovery against his client, a defendant, is not entitled to a lien on the property involved in the litigation. 2 R. C. L. p. 1073. In an able opinion written by Mr. Justice Woods, afterwards one of the judges of this court, in the case of Cauthen et al. v. Cauthen et al., 76 S. C. 226, 56 S. E. 978, 980, the judge says: "* * * It is true, after fixing the rights of the several parties, in order to enforce them, it became necessary for the court of equity to sell the land and distribute the fund, but manifestly it does not follow from this that it was the duty or function of the court of equity to say what was the express or implied contract of the different parties with their respective attorneys as to fees to be paid. * * * Fixing the fees which Cauthen owed to Messrs. Green & Hines was therefore not within the scope of the action, and the court of equity had no power to order a reference or to confirm the referee's report on that subject, except by consent of Cauthen." See, also, O'Connor & Co. v. Keiser, 85 S. C. 522, 67 S. E. 737; Harter et al. v. Johnston et al., 127 S. C. 64, 119 S. E. 169.

This seems to be the settled rule in the federal courts. In Platt v. Jerome, 19 How. 384, 385, 15 L. Ed. 623, the court said: "The attorney, however, even if he has a lien on the judgment, according to the course of proceedings in the court where it was recovered, stands in a different situation. He is not a party to the suit, nor does he stand in the place of the party in interest. He is in no way responsible for the costs of the proceedings, and to permit him to control them would, in effect, be compelling the client to carry on the litigation at his own expense, simply for the contingent benefit of the attorney." See, also, State of Texas v. White, Texas v. Russell, 10 Wall. 483, 19 L. Ed. 992; Gray v. Hopkins-Carter Hardware Company et al. (C. C. A.) 32 F.(2d) 876.

In Universal Oil Products Company v. Standard Oil Company (D. C.) 6 F.Supp. 37, will be found a review of authorities on this question.

A study of the authorities cited on behalf of the appellees shows that, without exception, the cases in which it was held that the court had authority to make allowances to attorneys were all cases in which the attorneys had recovered a judgment for their clients, had brought some fund into the court for the benefit of their clients and others, or cases in which the court was administering a fund properly chargeable with the payment of the fee allowed. It is not the duty of the court, nor does it have the power, to fix the fee of an attorney defending the client's title to property already in the client's possession. Courts cannot, in a suit in equity, summarily settle a controversy of this character between a lawyer and his client.

The action of the court below was beyond the scope of its jurisdiction, and the orders of the court are set aside.

Reversed.