Joseph GRIFFIN

v.

**SCOTT PAPER COMPANY**

v.

**LUCKENBACH STEAMSHIP COM-
PANY, Inc.**

No. 343 of 1957.   In Admiralty.

United States District Court
E. D. Pennsylvania.
June 3, 1963.

Milton M. Borowsky, Marvin I. Bar-
ish, Freedman, Landy & Lorry, Phila-
delphia, Pa., for plaintiff.

Benjamin F. Stahl, Jr., H. Wallace
Roberts, Clark, Ladner, Fortenbaugh &
Young, Philadelphia, Pa., for Scott Paper
Co.

Robert Cox, Krusen, Evans & Byrne,
Philadelphia, Pa., for Luckenbach S. S.
Co., Inc.

GRIM, District Judge.

From its plant at Everett, Washington,
Scott Paper Company shipped 12,500
bales of wood pulp to Philadelphia on
board the Luckenbach ship "Marine
Snapper." When the ship arrived at the
Luckenbach pier in Philadelphia, Lucken-
bach, which was a stevedore as well as a
shipowner, unloaded the bales onto
Scott's barges which were moored along-
side the ship. Luckenbach's employment
as a stevedore was under an oral contract.

Griffin, the libelant, was one of the
longshoremen employed by Luckenbach
for the unloading of the bales of wood
pulp as a member of a gang working on a
barge. The tool he and the other long-
shoremen used to move bales on this and
other cargoes was the ordinary longshore-
men's hook, a J-shaped piece of round
steel stock having a point at the tip of the
J and a short wooden crosspiece at the
other end and at right angles to the steel
as a handle.

The bales, measuring 30 by 30 by 15
inches, and weighing 400 pounds, were
made of many sheets, 30 inches square of
wood pulp, the consistency of soft blot-
ting paper. Around these sheets was a

wrapping of heavy paper or cardboard. Each bale was held together with four pieces of 12-gauge (.081 in.) steel wire wrapped around it, so arranged as to divide the two 30 by 30 inch sides of the bale into nine approximately equal rectangular areas, in the shape of a tic-tac-toe diagram.

The ship's tackle hoisted drafts of six bales each out of the ship's hold in cargo nets and lowered them over the side to the deck of the barge, where pairs of longshoremen, using their hooks, tumbled one bale at a time to a point near the location where it was to be placed.

The barge was not powered, had no superstructure, except a small cabin at the after end, and no wall or railing on any side. It had merely a flat deck with only a coaming, six inches high along its edges. On the barge was a Scott employee called a lighter captain, to whom Scott issued a "barge diagram" stating the number of bales (3150) to be loaded on the barge, and their weight (630 tons), the date, and the name of the ship. It was not the function of the barge captain to supervise the unloading of the "Marine Snapper" nor the loading of the barge. He had no authority to determine the manner in which the bales of wood pulp were to be moved onto the barge and placed thereon. The determination of how the bales were to be placed on the barge was solely within the authority of employees of the stevedore, except that Scott insisted that bales should not protrude over the edge of the barge.

To load the bales on the barge they had to be placed close together in orderly arrangement so that one layer of bales, lying flat, would make a satisfactory floor for the next layer of bales to be placed on top of it. To accommodate the large number of bales, it was necessary to place bales very close to the outside edges of the barge, but to prevent cargo damage while the barge was moving close to piers or other vessels it also was necessary that the bales should not protrude beyond the barge's edge.

Griffin, the libelant, and his partner, working at night atop the fourth tier of bales already loaded on the barge, had tumbled a bale nearly to its proper place to constitute a corner bale of the fifth tier, at the edge of the barge. In order to lift and pull one corner of the bale 12 or 14 inches and so put it in its proper place, Griffin placed his hook underneath the point where two wires crossed on the broad side of a bale. His partner held the opposite corner of the bale with his foot to prevent that corner from moving out of place. When Griffin pulled, one or both wires gave way, causing him to fall off the barge and to suffer the injuries for which he sued Scott Paper Company.

Griffin started the present litigation by suing the shipowner, Scott Paper Company. Scott then filed a third party action against Luckenbach, the stevedore, for indemnity. Scott settled the suit which Griffin brought against it for an amount which all parties agree is reasonable. The problem now is created by Scott's motion for judgment of indemnity in the third party action against Luckenbach, which has been tried non-jury.

An unusual feature of the present case is that the parties still in it wear several hats. Scott as owner of the barge is the shipowner, but it is also the consignor, the consignee, and the owner of the cargo, the wood pulp, as well as the party which packaged the wood pulp in bales and bound them with wire. Luckenbach, although it owned and operated the "Marine Snapper" was also acting as the stevedore for the unloading of the "Marine Snapper."

The evidence established that the 12 gauge wire which Scott used to bind the bales sometimes broke during the unloading, that it sometime gave way under a sudden pull or "surge", that bending or kinking weakened the wire, that such wire had been used for a number of years, and that bales of wood pulp arriving at Philadelphia from foreign ports were bound with metal strapping or heavier wire.

The wire with which the bales were bound was too light for one of its purposes, namely its use in dragging bales of wood pulp after longshoremen's

hooks had been connected therewith. This defective wiring constituted unseaworthiness. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962), Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963). The hook which Griffin and the other longshoremen used was also defective in that it was too small for its purpose. If it had been larger, as were the hooks which Scott used on bales in its warehouse at Chester, Pennsylvania, it would have made the moving of the bales a safer operation in that the hooks could be placed deep into the wood pulp and would not have torn from the wood pulp so easily. Scott or Luckenbach could have furnished larger hooks for use by longshoremen on the barge as Scott did at its warehouse in Chester. The use of a defective tool to unload a ship constitutes unseaworthiness for which the shipowner is liable to a longshoreman injured thereby, even though the stevedore may have brought the defective tool aboard the ship. Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), affirming without opinion Petterson v. Alaska S.S. Co., 205 F.2d 478 (9th Cir.1953).

Thus a substantial factor in causing the injuries to Griffin was a combination of two articles of defective equipment, namely defective wire and defective hooks, either or both of which rendered the barge unseaworthy.

██ ██ However, it was the action of the stevedore, Luckenbach, which put the unseaworthiness into play in such a way as to cause the injury to Griffin. It was negligence on the part of Luckenbach, the stevedore, to permit Griffin to move the bales using wire which was too light for its purpose and using longshoremen's hooks which were too small for their purpose of moving these bales with safety. Since Luckenbach committed acts of negligence, it breached its implied warranty arising from the oral contract to do its stevedoring work in a proper workmanlike manner. Since this breach of warranty brought the unseaworthiness into

play so as to be a substantial factor in causing the injuries to Griffin, the shipowner, Scott Paper Co., is entitled to recover indemnity from the stevedore, Luckenbach Steamship Company, Inc. Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 423, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 429, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

The statements in this opinion constitute the findings of fact and conclusions of law in the case.