Eugene **JEFFERIS**

v.

**ALCOA STEAMSHIP COMPANY, Inc.**

v.

**JARKA CORPORATION OF PHIL-ADELPHIA.**

Civ. A. No. 23770.

United States District Court
E. D. Pennsylvania.

June 3, 1963.

Joseph Weiner, Avram G. Adler, Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Thomas E. Byrne, Jr., Timothy J. Mahoney, Joseph Patrick Green, Krusen, Evans & Byrne, Philadelphia, Pa., for Alcoa S. S. Co., Inc.

George E. Beechwood, J. Paul Erwin, Jr., Beechwood & Lovitt, Philadelphia, Pa., for third-party defendant Jarka Corp. of Philadelphia.

GRIM, District Judge.

In this case the plaintiff longshoreman has recovered a verdict by answers to interrogatories against the original defendant and shipowner, Alcoa Steamship Company, Inc. There are no objections with reference to the verdict against Alcoa. It has been paid in full. The problem in the present case arises from the third-party action which was brought by the shipowner against the third-party defendant, Jarka Corporation, the stevedore and employer of the plaintiff. The stevedore had contracted

with the consignee of the cargo to unload defendant's ship. Plaintiff was injured during the course of the unloading.

Alcoa's ship, the Alcoa Pegasus, had a cargo of sugar. To remove the sugar from the hold at the tween deck level a hatch was opened on the top deck. Through this opening a conveyor crane was lowered to the tween deck. It had a number of moving scoops, carried on an endless belt which picked up the loose sugar and conveyed it out of the hold. This conveyor could take out much of the sugar, but not all of it. A vehicle, called a payloader, bulldozed the sugar from the inaccessible parts of the hold to a point where the moving scoops could pick it up.

The payloader was lowered through the hatch by a crane and harness to the tween deck where it came to rest on the boards covering part of the hatch at the tween deck level. When the payloader came to rest, Jefferis mounted the vehicle and started to drive it on to the tween deck. When the front wheels had reached the deck, the boards covering the hatch broke, the rear part of the payloader dropped a few feet, and the payloader's harness, while still connected to the crane, moved forward pressing Jefferis against the steering wheel, and causing the injuries for which this suit was brought.

The hatch boards at the tween deck level extended the long way across the hatch and were approximately ten feet long. When they collapsed they were supported at one end by the end of the hatch and at the other by a metal beam, known as a king beam, which crossed the hatch under the boards approximately ten feet from the end of the hatch. One of the issues of fact in the case was whether another metal beam, known as a queen beam, had been placed beneath the boards between the king beam and the end of the hatch to support the hatch boards, as it was at this point that the boards collapsed and the accident occurred. Another important issue of fact was whether or not the hatch boards themselves were defective by being rotten or cracked.

The question of whether or not a supporting queen beam had been used was presented to the jury by an interrogatory:

"(1) At the time of the accident to Mr. Jefferis were the hatchboards upon which his payloader was being landed supported at the center by what is known as a queen, or blind, beam?

Yes _____ No __X__ "

In answering this interrogatory, the jury made a finding on one of the important issues in the case. It made no other finding in reference to the effect of the failure to use a supporting queen beam.

The only other interrogatories which were answered by the jury were:

"(3) Was the breaking of these hatchboards due to the unseaworthiness of the defendant's ship, Alcoa Pegasus, as the term [un] seaworthiness was defined in the Court's charge?

Yes __X__ No _____.

"(4) Was this unseaworthiness a substantial factor in the cause of the accident?

Yes __X__ No _____

\* \* \* \* \* \*

"(7) What is the amount of the damages you find for the Plaintiff? __$15,000.00__ "

Therefore, the jury made findings that no queen beam was used, that the breaking of the hatch boards was due to unseaworthiness, that this unseaworthiness was a substantial factor in causing the accident and the injuries and that the damages amounted to $15,000.00.

The trial judge defined unseaworthiness correctly in his charge. The evidence fully warrants a finding that there was unseaworthiness as the trial judge defined it, that it was a substantial factor in causing the injury and that

the damages amounted to $15,000.00. Recognizing this, the shipowner paid the verdict of $15,000.00 leaving in the case only the question as to whether or not the stevedore, third-party defendant, must pay indemnity to the shipowner. On this issue the third-party defendant was entitled to a jury trial. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed. 2d 798 (1962). On this question the trial judge might have presented to the jury other interrogatories to cover this question:

> "Was the stevedore, Jarka Corporation, guilty of negligence which constituted a breach of its warranty to unload the ship in a workmanlike manner and which was a substantial factor in causing the accident and injuries to Jefferis?"

The trial judge did not submit these issues to the jury and possibly a new trial should be granted for this purpose.

However, this would seem to be a proper place to make use of Rule 49 of Fed.R.Civ.P. which, in reference to the submission of interrogatories to a jury, states:

> " * * * If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

■ The record before the court does not indicate that either counsel demanded the submission to the jury of the question whether the failure to place a supporting queen beam was negligence constituting a breach of the stevedore's warranty and a substantial cause of the accident.

■ Therefore, after an independent weighing of the evidence I find as a fact under Rule 49 that Jarka Corporation failed to place a supporting queen beam under the hatch boards, as a result of which, the boards broke under the weight of the payloader. I further find that the failure to place the supporting queen beam constituted negligence and a breach of Jarka's implied warranty,[1] to unload the ship in a workmanlike manner.

In view of this, defendant Alcoa Steamship Company is entitled to a judgment of indemnity against Jarka Corporation of Philadelphia, third-party defendant.

This result is consistent with the jury's findings as far as they go, even if the jury found that the unseaworthiness of the ship was due to the presence of defective hatch boards.[2] If defective hatch boards rendered the ship unseaworthy, the evidence establishes that it was the stevedore who brought this unseaworthiness into play. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

### ORDER

AND NOW, this 3rd day of June, 1963, judgment is entered in favor of third-party plaintiff, Alcoa Steamship Company, Inc., and against the third-party defendant, Jarka Corporation of Philadelphia, in the sum of $15,000.00 plus possible interest and reasonable attorney's fees and expenses incurred by Alcoa Steamship Company, Inc., in defending against the claim of Eugene Jefferis, to be determined after a hearing at a time to be fixed at the convenience of the parties and the Court.

1. See Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

2. This is questionable because although the jury found that there was unseaworthiness, it cannot be ascertained for certain whether the unseaworthiness came from defective boards or a lack of a queen beam.