**STRACHAN SHIPPING COMPANY, Appellant,**

v.

**Tom MELVIN and Ponce Cement Corporation, Appellees.**

No. 19753.

United States Court of Appeals Fifth Circuit.

Jan. 7, 1964.

Rehearing Denied Feb. 3, 1964.

Marion R. Shepard, Mathews, Osborne & Ehrlich, Jacksonville, Fla., for appellant.

Nathan Bedell, Louis Kurz, Jacksonville, Fla., Malcolm B. Rosow, New York City, Charles Kohlmeyer, Jr., New Orleans, La., E. D. Vickery, Houston, Tex., Bedell, Bedell & Dittmar, Jacksonville, Fla., for appellees, Standard, Weisberg & Harolds, New York City, of counsel,

Charles Kohlmeyer, Jr., New Orleans, La., E. D. Vickery, Houston, Tex., for T. Smith & Son, Inc., Walsh Stevedoring Co., Inc., and Texas Employer's Ins. Ass'n, amici curiae, Lemle & Kelleher, New Orleans, La., Royston, Rayzor & Cook, Houston, Tex., of counsel.

Before BROWN, GEWIN and BELL, Circuit Judges.

GEWIN, Circuit Judge.

Melvin was injured while performing services as a longshoreman on a ship. His employer Strachan, the appellant here, paid him $27,836.92 compensation and other benefits under the Longshoreman's Compensation Act.[1] Melvin then employed an attorney to prosecute his claim against a third party tort feasor. The contract between Melvin and his attorney stated:

> "It is hereby understood and agreed that I am to receive sixty (60%) per cent of all damages recovered by way of suit or settlement, and my attorney is to have for his fee the balance derived from said suit or settlement and disbursements and taxable costs."

Suit was filed and the case was tried by a jury which returned a verdict for Melvin of $30,000.00. The third party against whom the judgment was rendered paid that amount into the registry of the court and Melvin's attorney filed a petition asserting that he was entitled to 40% of the sum plus his expenses arising out of the suit, and claiming that his lien had priority over the subrogation lien claimed by appellant. The District Court held that Melvin " * * * is entitled to reimbursement for his expenses of the litigation, including a reasonable attorney's fee, as a first charge against the fund recovered from the third party." The court thereafter conducted a hearing, took evidence, and determined that a reasonable attorney's fee was 40% of the amount recovered plus expenses. Accordingly, out of the $30,000.00, Melvin's attorney was awarded $12,000.00 as a fee plus $558.88 expenses. The remainder was ordered to be paid to appellant. It is well settled and not disputed on this appeal that both the employer and the attorney have a lien on the recovery. The sole question here is, which of the two liens take priority when the recovery is insufficient to pay both liens in full.

Appellant contends that since the payment of the attorney's fee has reduced the amount recovered to less than its $27,836.92 subrogation lien, it in effect is being required to pay part of the fee of an attorney it did not employ. The Federal Courts have long recognized the following principle:

> "That under certain circumstances attorneys, who are officers of the court, will be protected by the court in the collection of their fees is not to be doubted. This is ordinarily done on the theory that attorneys have a lien upon any fund in the hands of the court or being administered by the court or that has been brought into the court by their efforts, for the value of the services rendered."

Wessinger v. Sturkie, 4 Cir.1935, 77 F.2d 751. See also Sprague v. Ticonic Nat.

---

1. 33 U.S.C.A. 901 et seq.

Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L. Ed. 1184 (1938); and United States v. Jacobs, (D.C. Maryland 1960) 187 F. Supp. 630.

In the order directing the payment of the attorney's fees, the District Court considered all factors involved and concluded:

"* * * Upon consideration of such petition, the affidavit of plaintiff's chief counsel and testimony adduced with respect to the reasonableness of the attorneys' fee claimed, the Court finds that a reasonable fee for the services performed by the plaintiff is 40% of the amount of the recovery or the sum of $12,000.00."

Title 33 U.S.C.A. § 933 allows the employer to sue the third party tort feasor if the injured employee fails to do so within the prescribed period. Section 933(e) prescribes the method and priorities of the distribution of any recovery made by the employer to be:

"(1) The employer shall retain an amount equal to—

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner);

(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

(C) all amounts paid as compensation;

(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer."

The act makes no provision for the method and priorities of distribution where the employee brings the suit. This court in Voris v. Gulf-Tide Stevedores, 5 Cir. 1954, 211 F.2d 549, was faced with the difficulties presented by this void in the statute. There, the employee was drowned on the job and his children were awarded $16.62 per week under the Longshoreman's Act, the payments to terminate upon their eighteenth birthdays. An action against a third party was instituted on behalf of the minor children and a judgment in the amount of $13,500.00 was recovered. The District Court, in the third party action, awarded to the children's attorneys, fees of $3,900.00; to the employer $1,742.58 for compensation already paid; and the balance of $7,857.42 was directed to "be recovered by the minor libellants * * *" The District Court then held that it was the total or gross recovery of $13,500.00 that should be credited to the employer against the future payments. On appeal, this court reversed stating the decisive question to be:

"* * * whether 'the amount recovered' referred to in Section 933 (f) means the amount actually received by the compensation beneficiaries in the third party action (that is less attorneys' fees) or whether it means the total amount paid by the third party defendant."

In answering the "decisive question", we held:

"* * * To hold that the minors recovered the aggregate amount paid by the defendant would be to disregard the realities of the situation, and to ignore the age-old equitable principle that one who accomplishes the creation of a fund for the benefit of another is entitled to reim-

bursement therefrom for the reasonable costs thereby incurred."

\* \* \* \*

" \* \* \* The issue here is as to who shall bear the burden of the necessary cost of that recovery with respect to the item of attorneys' fees. The insurance carrier was the sole beneficiary of the legal services rendered for the plaintiff in the third party action, and it does not appear that it was in any way prejudiced by the judgment; on the contrary, it was greatly benefited by it. The subrogee has accepted the benefits of that recovery, and it should bear its reasonable burdens. 34 Cyc. 370, note 64."

In Voris, among other factors, our conclusion was based on two important considerations: (a) where the employer has brought the suit, the act expressly allows the deduction of attorney's fees before requiring the employer to turn over to the injured employee (or his representatives) any excess over the compensation paid or to be paid; and (b) the act must be liberally construed in favor of the workman;[2] and therefore, " \* \* \* the acceptance by Congress of the equitable principle in the case of employers requires a clear legislative expression to the contrary to authorize a departure from that principle by the courts in the case of third party actions by injured employees or their representatives; and that we do not have."

We have carefully examined the cases cited by the appellant and by Amicus Curiae, but find none of them controlling here. Under the particular facts of this case and the record before us, we are not able to say that the trial court committed error in granting the relief sought by the petition of the appellee to fix a lien for attorney's fees; or in the subsequent proceeding in which the court received evidence and fixed a reasonable attorney's fee to be paid out of the fund in question. Needless to say, District Courts will exercise careful supervision over cases of this nature and give proper consideration to the equitable principles involved, fully exercising such powers to prevent an unscrupulous attorney from profiting at the expense of litigants.

The judgment is affirmed.

JOHN R. BROWN, Circuit Judge (dissenting).

To fill a slight literal void in the statute, the Court's solution produces inequitable, if not shocking, results. None of these consequences could have been intended by a Court speaking, as does this one, in the high and noble terms of equitable principles linked with a liberal application of the Longshoremen's Act in favor of the injured maritime worker as the some-time ward of the Admiralty. In so deciding, the Court rejects contrary holdings of at least two other Circuits and applies our prior Voris decision to a situation not even remotely contemplated by that case. Moreover, this method of distribution might encourage questionable professional practices.[1] This last comes about from the fact that it is the plaintiff's lawyer, not the injured harbor worker, who is the sole beneficiary of the rule now announced. Congress, in my judgment, could have intended no such result. Consequently, the decision in terms of statutory construction of § 933(f) is not sustainable. And apart

---

2. See the recent case of Reed v. Steamship YAKA, et al., (1963) 323 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, reaffirming this principle:

"We have previously said that the Longshoremen's Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.'"

1. In none of my remarks do I mean to criticize the professional conduct of the distinguished members of the Bar of this Court who are plaintiff's counsel. It is plain that I do not think the fee allowed is legally supported, but since three out of the four Judges passing on it conclude otherwise, it is certainly not professionally improper for them to accept it. My comments in terms of professional, ethical considerations are addressed to the legal conclusion reached by the Court, not to the counsel involved.

from statutory construction it has no support in equitable principles.

### Decisions of Other Courts

Although it is true that neither of them precisely involve situations in which recovery from the third party was insufficient to (a) reimburse the employer for compensation payments paid or payable, (b) pay to the plaintiff's counsel his agreed percentage attorney's fees, and (c) leave a substantial amount for the injured plaintiff, this circumstance can hardly serve as a basis for distinguishing and then rejecting Fontana v. Pennsylvania Railroad Co., S.D.N.Y., 1952, 106 F.Supp. 461, 1952 A.M.C. 1535, affirmed 2 Cir., 1953, 205 F.2d 151, 1953 A.M.C. 1258, cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390, and Davis v. United States Lines Company, 3 Cir., 1958, 253 F.2d 262, 1958 A.M.C. 633. Each of these cases expressly prescribes this formula for distribution of a recovery in the worker's suit for damages[2] in contrast to the one here announced:

| Fontana-Davis | Melvin (The instant case) |
|---|---|
| (1) Total recovery | (1) Total recovery |
| (2) Less: Employer's Compensation payments —— | (2) Less: Atty's. fees on % of (1) —— |
| (3) Net recovery | (3) Net recovery |
| (4) Less: Atty's. fees & expenses based on % of (3) —— | (4) Less: Employer's Compensation payments —— |
| (5) Balance to worker | (5) Balance to worker[3] |

No case under the Longshoremen's Act up to the present decision ever allowed the plaintiff's lawyer to get his fee out of the employer's prior portion of the recovery. As illustrated later on, the decision is a bonanza. It is a heads-I-win-tails-you-lose gamble: if there is any— I repeat *any*—recovery from the third party vessel owner, the lawyer is guaranteed a first claim to the full extent of his contingent percentage fee (plus expenses), and this even though the injured worker gets nothing.

2. Other cases applying these principles include The Etna, 3 Cir., 1943, 138 F.2d 37, 1943 A.M.C. 1126; Oleszczuk v. Calmar Steamship Corp., D.C.Md., 1958, 163 F.Supp. 370, 1958 A.M.C. 1914, 1915; Lundberg v. Prudential Steamship Corp., S.D.N.Y., 1951, 102 F.Supp. 115, 120, 1951 A.M.C. 1801; Richter v. United States, E.D.Pa., 1960, 190 F.Supp. 159.

3.

| Melvin | |
|---|---|
| (1) Total recovery | $30,000.00 |
| (2) Less: Atty's. fees on 40% of (1) and expenses | 12,552.88 |
| (3) Net recovery | $17,447.12 |
| (4) Less: Employer's Compensation Payments | 27,836.92 |
| (5) Deficiency to Employer | ($10,389.80) |
| (6) Balance to Worker | $ 0.00 |

### Our Voris Decision

The Voris decision is binding and there is neither request nor occasion for reconsidering it. Application of some of its broad statements to the instant situation demonstrates, however, that the result, and such expressions, should be confined to the problem there presented.

In Voris the question was not *distribution* of third party recoveries. The problem was the amount of the additional compensation benefits to be awarded to the injured worker by the Deputy Commissioner under § 933(f). As the statutory scheme works, an injured worker has a guaranty that he will get as a *minimum* the amount of compensation benefits due under the Act. The statute gives him, however, an added and frequently valuable, benefit. He can sue a third party, knowing that he runs no real risk because, no matter how the suit against the third party comes out,[4] the worker's benefits will be not less than those prescribed by the Act. Over and above the amount of the recovery from the third party, the employer remains liable for full compensation benefits. The problem in Voris was, therefore, not the one of determining whether, and if so, to what extent and from what sources, the plaintiff's lawyer was to be compensated. The question was *what* amount the minor beneficiaries had in fact received upon which to predicate the statutory guaranty of minimum benefits.[5] Under no possible reading of Voris was the employer required to pay to plaintiff's counsel an attorney's fees on its own recovery ($1742.58) representing compensation theretofore paid.[6]

The Voris case stands in substance for the proposition that where the employer seeks *credit* against further and added compensation benefits then due and owing only the net recovery from the third

---

4. The employer's obligation under § 933 (f) may, of course, be extinguished by a compromise settlement not made with the employer's written consent. § 933 (g).

5. In resolving what we described as " * * * the narrow issue before us" in Voris, we expressed this dominant principle in Voris in this way: "In Marlin v. Cardillo [1938, 68 App.D.C. 201, 95 F.2d 112], supra, we have observed that the purpose of the federal act was to give the injured employee the compensation therein provided or the amount recovered from a third party, *whichever was greater*. In Chapman v. Hoage [1936, 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370], supra, Mr. Justice Stone said that, while the employee may elect to pursue his remedy against a third party, such election does not deprive him of his right to compensation; that the employer or insurance carrier remains liable for any amount by which the recovery against a third person falls short of the prescribed compensation * * *." 211 F.2d 549, 552. (emphasis supplied).

In Davis it was phrased in these terms: "The injured employee, by reason of the Act is adequately provided for and is placed in a better position than the ordinary litigant prosecuting a civil action. An employee covered by the statute is guaranteed a *minimum* recovery despite any finding of fault on his part * * *." 253 F.2d 262, 265. (Emphasis supplied).

6. In Voris the employer recouped his prior compensation payments (item (2)) with no deduction or charge for attorney's fees:

| | | |
|---|---|---|
| (1) Gross amount recovery third party | | $13,500.00 |
| (2) Compensation payments by employer | | 1,742.58 |
| (3) Net recovery | | $11,757.42 |
| (4) 33⅓% atty. fee on (3) | $3,919.00 | |
| (5) Atty. fee (rounded off) | | 3,900.00 |
| (6) Net after deducting (2) & (5) | | $ 7,857.42 |

The sole question was whether the employer's credit as to further compensation benefits was item (3) $11,757.42 or item (6) $7,857.42.

party may be deducted. In effect the employer bears all, not just a pro rata part, of the attorney's fees. This is essential to effectuate the statutory purpose of giving the injured worker his minimum benefits. But here there is no question of added, further, future benefits due Melvin, the injured worker. Indeed, there is no problem between the employer and the injured employee under the Longshoremen's Act. The employer has paid all due by him and the employee has received all he is entitled to. The dispute is between the employer claiming its statutory priority for reimbursement, on the one hand, and the plaintiff's lawyer, on the other. But not until today has the injured worker's lawyer been regarded as one within the protection of the Longshoremen's Act.[7]

### Impact on The Injured Worker

If the rule now announced incidentally benefited the plaintiff's counsel by benefiting the injured worker, there might be some justification for the implied supposition that judicial construction of the Longshoremen's Act compels this result. The fact is, however, that the rule announced works against the injured worker and subordinates his interests to those of the lawyer with a contingent fee.

This is graphically illustrated by the inescapable arithmetical fact that with the employer's prior compensation payments in this case totaling $27,836.92, in order for the injured worker to get a red cent the recovery would have to approach nearly $48,000.00.[8] This is in sharp contrast to his recovery were the Fontana-Davis rule applied. Application of the Melvin rule means that the difference to the injured worker—in whose behalf the plaintiff's counsel has been employed and whose interests presumably are close to his professional heart—stands to lose, while his counsel stands to gain, over $11,000.[9] These are not fanciful figures adroitly contrived to present an extreme example.[10] Perhaps even more spectacular is the fact that for the injured worker's recovery under the Melvin rule to even begin to equal that of his counsel under a 60/40% contract, the jury ver-

---

7. Fees for legal services for claimants under the Act are severely regulated, § 928; cf. § 916; see also § 933(e) (1), (f).

8. Substantially all of these monetary examples have come from the brief of amici curiae.

9.

|  | Melvin Rule |  | Fontana-Davis Rule |
|---|---|---|---|
| Recovery | $47,316.32 |  | $47,316.32 |
| Less: | | Less: | |
| 40% Atty. fees | 18,926.52 | Compensation Paid | 27,836.92 |
|  | $28,389.80 |  | $19,479.40 |
| Less: | | Less: | |
| Atty. expenses | 552.88 | 40% fee | 7,791.36 |
|  | $27,836.92 |  | $11,688.04 |
| Less: | | Less: | |
| Employer's payments | 27,836.92 | Atty. expenses | 552.88 |
| Worker receives | 0.00 | Worker receives | $11,135.16 |

10. The brief amici curiae refers to a specific identified case then pending in the Eastern District of Louisiana involving a jury verdict of $38,500 and an employer's lien for compensation paid of $24,491.74. On a 1/3 contingent contract (plus estimated expenses $500), the injured worker receives $8,838.72 under Fontana-Davis, but only $674.93 under the Melvin rule. Duvernay v. Alcoa Steamship Co., Inc., et al., E.D. La., 217 F.Supp. 698. This case is now reported as to another phase, 1963, 217 F.Supp. 698, 1963 A.M.C. ——. The reported aspect of Duvernay is discussed note 18, infra.

dict in this instance would have to be in the neighborhood of $140,000.[11]

It is a strange rule, if not shocking in its professional implication, which in this case requires that the recovery from the third party come close to $50,000 before the injured worker even benefits at all, and must approach $140,000 before judicial balm for his "pain and suffering" equals that of his lawyer. But even this is not right. For the bargain was not 50/50. It was 60/40%.[12]

### Irreconcilable Hostility Between Vicarious Attorney and Client

I suppose we could overlook allowance of extraordinary compensation to a lawyer despite the fact that the legal services conferred no benefit or even were a detriment to his only client, if somewhere in this vague picture one could find that the lawyer did perform valuable services for someone, whether his client or not. But it is going too far too fast to suppose that while the employer may recoup part or all of his compensation payments out of the recovery, the suit was in any sense instituted in his behalf, or for his benefit or, for that matter, he wanted it at all.

In this sometime weird Ryan-Yaka world,[13] there is only one thing certain: no stevedore in his right mind wants, or encourages, a suit by an injured employee against a third party vessel or vessel owner. The visionary dream of recouping compensation payments almost always evaporates. For the filing of the third party suit precipitates a three-cornered Kilkenny Fair in which all lash out against the other,[14] and in the end it is so often the case of the injured worker winning, and the impleaded-stevedore-employer losing as a result of an injury that some thought was exclusively covered under the Longshoremen's Act. 33 U.S.C.A. § 905.

The obligations imposed on the stevedore-employer under the Ryan doctrine are ominous and ever-expanding. For present purposes these may be quickly capsulated. In nearly every situation the question whether the stevedore has breached its warranty of workmanlike service is a fact issue exposing the stevedore to the peril of an adverse judge or jury finding. Negligent use by the stevedore of seaworthy equipment creating an unseaworthy condition may be a breach.

II.

|  | Melvin Rule |
|---|---|
| Assumed recovery | $140,000.00 |
| Less: 40% atty. fee | 56,000.00 |
|  | $ 84,000.00 |
| Less: Employer's Compensation | $ 27,836.92 |
| Worker receives | $ 56,163.08 |

12. Under his contract with his attorney Melvin was to receive "sixty (60%) per cent of all damages recovered by way of suit or settlement, and [his] attorney [was] to have for his fee the balance derived from said suit or settlement and disbursements and taxable costs." But under the Melvin rule 60% turns out to be zero while 40% is 100%.

13. Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9; Reed v. SS Yaka, 1963, 373 U.S. 410,

83 S.Ct. 1349, 10 L.Ed.2d 448, 1963 A.M.C. 1373.

14. In this case the steamship company defendant impleaded the appellant, the stevedore-employer of the injured worker, Melvin. The impleader was the now classic one asserting that the stevedore breached its warranty of workmanlike performance so that any unseaworthiness or negligence of the vessel was finally attributable to the stevedore. This impleader was dismissed voluntarily on the eve of trial.

Failure to observe or take steps to correct known unseaworthy conditions may impose a liability for indemnity. If workmanlike performance by the stevedore would have prevented the injury, the vessel owner's right of indemnity is not necessarily precluded even though the vessel was unseaworthy. Uncertainties, both legal and factual, remain concerning circumstances permitting or precluding indemnity. These include, for example, whether it is necessary for the stevedore to cease work pending correction of defective conditions by the vessel owner, the existence or scope of any implied warranty of seaworthiness for gear furnished by the stevedore to the vessel, and the like.[15]

Any realistic appraisal of the currently developing law under the Ryan doctrine demonstrates that the worker's counsel could not possibly be representing the stevedore-employer. Indeed, nearly everything required of counsel in the conscientious representation of the worker's interest was against, not for, the stevedore-employer. In many ways, no good could come to the stevedore from the worker's suit.

First, by filing the lawsuit against the vessel, the plaintiff's counsel precipitated an impleader action for indemnity against the stevedore which was actually filed. The best the stevedore-employer could hope for was a complete victory, that is, a denial of the shipowner's impleader. But such a victory would not be cheap. Obviously in such impleader suit, the stevedore could not turn its defense over to the worker's counsel since the facts to sustain the plaintiff's recovery against the vessel owner would very likely give rise to an automatic right of indemnity by shipowner against stevedore.[16] Consequently, even the eventuality of an outright denial of the ship-

---

15. See Vickery, Stevedore-Ship Owner Indemnity: The Ryan Doctrine, Tul.U. 7th Tidelands Inst. 167–76 (1963), discussing in detail the principles and developments in this explosive field. This article alone cites over 60 cases of this type decided in the brief span from 1956 to the present. The list never ends, see the following in the past few months: Delta Engineering Corp. v. Scott, 5 Cir., 1963, 322 F.2d 11, 1963 A.M.C. ——; Caputo v. United States Lines, 2 Cir., 1963, 311 F.2d 413, 1963 A.M.C. 1921, reversing E.D.N.Y., 1962, 202 F.Supp. 600, 1963 A.M.C. 1926, cert. denied, 1963; Imparato Stevedoring Corp., v. United States Lines Co., 374 U.S. 833, 83 S.Ct. 1871, 10 L.Ed.2d 1055, 1963 A.M.C. ——; Damanati v. The A/S Inger, 2 Cir., 1963, 314 F.2d 395, 1963 A.M.C. 852; Orlando v. Prudential Steamship Corp., 2 Cir., 1963, 313 F.2d 822, 1963 A.M.C. 570; Williams v. Pennsylvania R.R., 2 Cir., 1963, 313 F.2d 203, 1963 A.M.C. ——; American Export Lines, Inc. v. Atlantic & Gulf Stevedores, Inc., 4 Cir., 1963, 313 F.2d 414, 1963 A.M.C. 567, reversing E.D.Va., 1962, 205 F.Supp. 316, 1962 A.M.C. 1702, cert. denied, 373 U.S. 924, 83 S.Ct. 1525, 10 L.Ed.2d 422, 1963 A.M.C. 1648; Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 4 Cir., 1962, 311 F.2d 663, 1963 A.M.C. 557; Bielawski v. American Export Lines, E.D. Va., 1963, 220 F.Supp. 265, 1963 A.M.C.

——; Jeffers v. Alcoa Steamship Co., E.D. Pa., 1963, 219 F.Supp. 250, 1963 A.M.C. ——; Griffin v. Scott Paper Co., E.D.Pa., 1963, 219 F.Supp. 41, 1963 A.M.C. ——; Duvernay v. Alcoa Steamship Co., Inc., E. D.La., 1963, 217 F.Supp. 698, 1963 A.M.C. ——; States Steamship Co. v. Portland Stevedoring Co., D.Ore., 1963, 216 F. Supp. 934, 1963 A.M.C. ——; Isthmian Lines, Inc. v. Canadian Stevedoring Co., D.Ore., 1963, 216 F.Supp. 856, 1963 A.M.C. ——; Misurella v. Isthmian Lines, Inc., S.D.N.Y., 1963, 215 F.Supp. 857, 1963 A.M.C. ——; United States Lines Co. v. Nacirema Operating Co., D.Mass., 1963, 215 F.Supp. 627, 1963 A.M.C. 1423; Cassone v. Companie Venezolana De Navegacion, E.D.N.Y., 1962 A.M.C. 1347.

To this must be added our very recent cases Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V., 5 Cir., 1963, 324 F.2d 746, 1963 A.M.C. ——; Grace Lines, Inc. v. Port Everglades Terminal Co., 5 Cir., 1963, 324 F.2d 699, 1963 A.M.C. ——.

16. The complaint alleged that the vessel was unseaworthy (or the vessel negligent) because the hatch-tender had to stand on a jury-rigged temporary platform of hatchboards resting on permanent deck pipes. The answer and impleader asserted that this "unseaworthy" condition was due to purposeful action of the supervisory personnel of the stevedore.

owner's indemnity claim, would mean large expenditures by the stevedore for its own counsel's fees in defense of the impleader.

Second, if the injured worker recovered damages and the stevedore was held to have breached its warranty of workmanlike performance, the stevedore would have to indemnify the vessel owner for the full amount of the plaintiff's judgment notwithstanding the exclusive liability provision of the Longshoremen's Act. § 905.

Third, after paying the total judgment for the worker's damages, the stevedore would also be liable under the indemnity for the attorney's fees and expenses incurred by the vessel owner in defending the worker's suit. At that point the stevedore will thus have paid (a) its own counsel's fees and (b) those of the defendant-vessel owner. But it does not end there, for it is possible for the vessel owner to defeat the claim of the worker and still recover from the stevedore the legal expenses and fees incurred by the shipowner in the defense of the main suit.[17]

Thus the best the stevedore can come out for is its own attorney's fees, with a strong likelihood that it will have to pay those of the defendant shipowner, and may well end up paying those of the injured worker's counsel as well.[18]  A

17. In Strachan Shipping Company v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V., 5 Cir., 1963, 324 F.2d 746, 1963 A.M.C. ——, this Court in "a case of first impression" on the basis of a jury finding of nonworkmanlike performance holds the stevedore liable to indemnify the shipowner-defendant for the shipowner's legal expense and fees even though the defense was successful and resulted in the denial of all relief to the injured worker.

18. For specific results in an actual case, see Duvernay v. Alcoa Steamship Co., Inc., E.D.La., 1963, 217 F.Supp. 698, 1963 A.M.C. ——, discussed note 10, supra. The District Court on a finding of nonworkmanlike performance held the stevedore liable to reimburse the shipowner $11,666.66 as legal fees and $1,576.10 as expenses incurred in the defense of the worker's main suit. Now that the Melvin rule applies, the stevedore ends up paying substantially all three attorneys' fees:

| | I<br>Melvin Rule | | II<br>Fontana-Davis<br>Rule |
|---|---|---|---|
| (1) Jury verdict | $38,500.00 | (1) Jury verdict | $38,500.00 |
| (2) Less:<br>Worker's<br>atty. fees<br>(1/3) and<br>$500 exp. | 13,333.33 | (2) Less:<br>Employer's<br>Comp.<br>Payments | 24,491.74 |
| (3) | $25,166.67 | (3) | $14,008.26 |
| (4) Less:<br>Employer's<br>Comp.<br>Payments | 24,491.74 | (4) Less:<br>Worker's atty.<br>fees (1/3)<br>& $500 exp. | 5,169.42 |
| (5) Worker's<br>share | $ 674.93 | (5) Worker's share | $ 8,838.84 |

Under the *Melvin* rule the worker bears the full impact of reimbursing the employer's compensation payments. At least to the extent of the difference between I(2) and II(4) ($8,163.91) the stevedore will or may bear this (see note 20, infra). Moreover, for the privilege of "recouping" its compensation payments of $24,491.74 (I(4) or II(2)), the stevedore must pay:

|  |  |  |
|---|---|---|
| (a) Its own legal expense | $ | ? |
| (b) Its own legal fees | | ? |
| (c) Shipowner's legal expense | | 1,576.10 |
| (d) Shipowner's legal fees | | 11,666.66 |
| | $ | ? |

rule producing that remarkable result is surely open to question.

Despite the fact that the institution of the worker's suit against the steamship company locked him and his stevedore-employer in positions of irreconcilable conflict, the Court on some undisclosed notions of equity requires the stevedore to pay these lawyers for the privilege of being exposed at their hands to substantial liabilities which became greater, not less, as these lawyers did their job well. Again, we are not talking about theoretical, extreme, Socratic examples. On the argument counsel candidly stated that during the trial of the case a settlement for $80,000 was rejected. Considering the extent and nature of the injuries sustained, no criticism could, or is, directed at them for this strategic-tactical judgment. But if these lawyers are entitled to compensation for a supposed benefit conferred upon one who never employed them, I would think they would have a serious professional responsibility to consider the interest of such hoped-to-be-client. Consideration of the stevedore's interest for even a slight moment would have demonstrated that the settlement had to be accepted. But to ignore this positive demand out of like consideration for the interests of their real client Melvin put them in a position of irreconcilable conflict requiring them to withdraw for one or both of their "clients," actual or vicarious. The result is that because of the activities of a lawyer whom they never hired, who instituted a suit they never wished, the failure of that lawyer to accept the settlement tendered cost the stevedore not less than $10,000 [19] and might have run as high as $30,000 to $40,000.[20]

[19].

|  |  |  |
|---|---|---|
| Jury verdict |  | $30,000.00 |
| Less: Atty. expenses | $   558.88 |  |
| Atty. fees | 12,000.00 | 12,558.88 |
|  |  |  |
| Amount received by stevedore for compensation paid |  | $17,441.12 |
| Total compensation paid | $27,836.92 |  |
| Less: Amount recovered | 17,441.12 |  |
|  |  |  |
| Immediate net loss |  | $10,395.80 |

[20]. Rounding off the figures, distribution of $80,000 settlement would have been:

|  | Melvin Rule |  | Fontana-Davis Rule |
|---|---|---|---|
| Recovery | $80,000 |  | $80,000 |
| Less: Atty's. 40% fee | 32,000 | Less: Compensation payment | 28,000 |
|  | $48,000 |  | $52,000 |
| Less: Employer Compensation | 28,000 | Less: Atty's. 40% fee | 20,800 |
| Worker | $20,000 | Worker | $31,200 |

Considering the serious injuries sustained, the employer has a substantial liability for added compensation and medical expense in the future. § 933(f). Applying *Voris* the net received by the worker would have been $20,000 under *Melvin*, $31,200 under *Fontana-Davis*. In other words, rejecting the settlement cost the employer $20,000 or $31,500 in credits. To this must be added the $10,395.80, note 19, supra, actual loss which represents, in effect, payment of the worker's counsel fees by the stevedore.

Insupportable by Statute or Equity

As I analyze it, the working of the Court's rule benefits the worker's lawyer only, works against the interest of the injured plaintiff, and subjects the stevedore-employer to the obligation of paying substantial fees to a person not hired by it to institute unwanted litigation having awesome and expensive perils which are necessarily ignored by the vicarious counsel as they faithfully discharge their duties to their real—and only—client.

Nothing in the Longshoremen's Act remotely requires that. And apart from some supposed statutory policy, I cannot believe that the noble principles of equity can be invoked in its behalf.

I must therefore dissent.[21]

21. I would refer briefly to a few peripheral matters in the Court's opinion.

I do not think it is accurate to state that "both the employer and the attorney have a lien on the recovery. The sole question is, which of the two liens take priority * * *." The employer assuredly has a lien for compensation paid. But the lawyer's lien is not under the Longshoremen's Act. If one exists, it is under Florida law and then only for the services rendered to his only client Melvin.

Likewise, while it is true that the District Court heard evidence as to the reasonableness of a 40% fee, this was on the hypothesis that the counsel's services were rendered to his client, not a stranger, or here, his adversary.